GEORGE S. KING and another *vs.* MINNEAPOLIS UNION RAILWAY COMPANY.

June 12, 1884.

**Eminent Domain—Compensation for Property Taken.**—When property is taken for public uses, the owner is entitled to its market value for the use to which it may be most advantageously applied, and for which it would sell for the highest price in the market.

**Same—Market Value—Evidence.**—Any evidence is competent, and any fact is proper to be considered, which legitimately bears upon the market value of the property.

**Same—Property Improved for Special Purpose.**—Where the property has been improved for a special purpose for which it is especially suited, (as in this case, for the manufacture of plows,) if the fact that the business has been thereon established and in operation has enhanced the market value of the property as a site for carrying on such business, it is proper to take this fact into consideration.

**Verdict Sustained.**—Evidence considered, and *held* sufficient to sustain the verdict.

Proceedings instituted by the Minneapolis Union Railway Company to condemn for railway purposes a leasehold interest in certain lots in the city of Minneapolis, owned by Laraway & King, the respondents in this appeal. The award of the commissioners having been made and filed, Laraway & King appealed therefrom to the district court for Hennepin county, where a trial was had before *Koon, J.,* and a jury, who assessed the damages at $33,000. The railway company appeals from an order refusing a new trial.

*J. M. Shaw* and *J. B. Gilfillan,* for appellant.

*Wilson & Lawrence* and *Robinson & Bartleson,* for respondents.

MITCHELL, J. This proceeding was instituted by the railway company to condemn for railway purposes a leasehold interest of Laraway & King in certain lots in the city of Minneapolis, together with certain buildings and fixed machinery thereon. It was brought into the district court on appeal from the award of the commissioners, and the only issue was the amount of compensation to which Laraway & King were entitled; and inasmuch as their entire interest was

taken, the issue resolved itself into the question of the value of their leasehold interest. After verdict, the railway company moved for a new trial on the grounds (1) of errors of law occurring at the trial; and (2) that the verdict was against law and not justified by the evidence. This motion having been denied, the company appeals.

On the trial numerous exceptions were taken to the rulings of the court in the admission of evidence, and to his charge to the jury; but, when examined, we find they all involve really one, and only one, question, viz., whether the court did not permit an improper element to be taken into consideration in ascertaining the value of respondents' leasehold interest in this real estate; hence they may all be considered together. Respondents held a lease of the premises for 99 years. The terms of rental were 7 per cent. per annum on the appraised value of the land, exclusive of improvements, and the payment of all taxes and assessments. A new valuation of the land was to be made every five years, which furnished the basis of the rental for the five years following. Respondents erected buildings on the premises, and placed therein certain fixed machinery for a plow factory. The buildings and machinery were especially designed for that purpose, and, presumably, could not be advantageously used for any other. They had for over 14 years carried on this manufacturing business on the premises, and were still doing so when these condemnation proceedings were commenced. The evidence minutely described the situation of the premises, the size of the buildings, the nature and character of the machinery, and the uses to which it was adapted. Witnesses were also called to prove the value of the respondents' leasehold interest, including the buildings and machinery. While the exceptions to the admission of evidence as well as to the charge of the court vary somewhat in form, and present the matter in different shapes, yet the general question raised by all of them really is whether it was proper, in determining the value of this property, to take into account the fact that there was a manufacturing business established and in operation upon the premises. That this was allowed is really the alleged error here urged, and which we have to consider.

We think it may be stated as elementary that a person is entitled to the fair value of his property for any use to which it is adapted

v.32—15

and for which it is available, and for which it may be sold. He is entitled to the value of his property for any use to which it may be applied, and for which it would ordinarily sell in the market, whether that use be the one to which it is presently applied, or some other to which it is adapted. It is, we think, equally true that any evidence is competent and any fact is proper to be considered which legitimately bears upon the question of the marketable value of the property. In this case evidence was introduced tending to prove that the fact of a business having been established and carried on on the premises for so long a time materially increased the market value of this property. If this was the fact, it was competent to prove it; and, if proved, we cannot see why it was not proper to take it into consideration in estimating the value. Who can say that this circumstance would not affect its value; that is, what a purchaser would ordinarily be willing to pay? When we speak of the market value of property as being what purchasers generally would pay for it, we do not mean what men would pay who had no particular object in view in purchasing, and no definite plan as to the use to which to put it. The owner has a right to its value for the use for which it would bring the most in the market. This property was expressly built for a plow factory, and was especially suited for such a use. And it is not unreasonable to suppose that a purchaser would give more for it than he would if the business had been suspended for a time or had never been established there. Take, for example, a hotel built expressly as a public house, and not capable of advantageous use for anything else: might it not be worth more, that is, bring more in the market, by reason of the fact that it had been for years run as a hotel? So with a stand long used for some branch of mercantile business. From that very fact it might be worth more for that kind of business than any other, and a man who wished to buy might give more for it than he otherwise would. If so, why is not that a proper element to take into account in determining its value? To do so is not, as counsel seems to argue, to pay the owner for his loss of business or loss of future profits, but simply to give him the marketable value of his property for the use for which it is best adapted, and for which it would bring the most.

The court below expressly instructed the jury, in substance, that they could only allow respondents the fair market value of the property, and could not take into account their loss of profits, or damages to their business; but that in estimating this value they could take into account its desirable location for this or any other legitimate business, and the fact that a business had been established there, so far as these considerations would affect the value of the property, or what a purchaser would be willing to pay for it. Reduced down, this, it seems to us, is the plain import of the charge of the court, and the meaning which the jury would naturally attach to it. And it was only to this extent and for this purpose that witnesses were permitted to take into account the fact that this business had been established and was in operation on the premises. In this we think there was no error, and this really covers the substance of all that is here assigned as error on the trial.

2. The appellant makes the further point that the verdict is not justified by the evidence; that is, that the damages awarded were excessive. On the trial some witnesses were introduced who testified as to the value of the entire property together; that is, the lease of the ground, the buildings, and the machinery, as a whole. Their estimate, in some instances, placed the value beyond the amount of the verdict. Other witnesses were introduced by respondents who put their estimate of the value of the lease of the ground, the buildings, and the machinery, each separately. Now the method by which the appellant reasons that the verdict is excessive is something like this: The value put upon the buildings by the plaintiffs' own witnesses was $8,000, on the machinery, $12,000; therefore, the jury must have allowed $13,000 as the value of the lease of the land, (the whole verdict being $33,000;) that it is manifest from its terms that this lease, (which was in evidence,) so far from being worth $13,000, was really worth nothing, its conditions being so onerous upon the lessees. Although ingenious, this mode of reasoning is clearly unsound. In the first place, whatever may be our guess, based on our personal knowledge of business, we have no right to say, as a matter of law, that such a lease is not worth something. Some witnesses put quite a high value upon it. In the next place, it does not follow that the jury

allowed $13,000 as the value of a lease of the bare ground. It was not the value of the buildings disconnected from the lease, and machinery, and of the machinery disconnected from the lease and buildings, and of the lease disconnected from the buildings and machinery, but of the whole together, as connected with each other, which respondents were entitled to. They were not required to sell their property in fragments. The sum of the values of each part by itself, and separately from the others, was not necessarily the value of the whole plant as an entirety. We are rather impressed with the idea that, perhaps, the verdict may have been somewhat large, but there is evidence reasonably tending to sustain it, and we see no good ground for disturbing it.

Order affirmed.