# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CHAIRMAN OF THE HIGHWAY COMMISSION V. J. R. PARKER.

### January 20, 1927.

1. EMINENT DOMAIN—*Damages to the Residue of Tract—Difference between Market Value Before and After the Taking of the Property.*—In ascertaining damages to the residue of a tract, a part of which was taken for a public use, the measure of the plaintiff's damages is the difference between the market value of such residue at the time of taking and its market value after such taking, and, in ascertaining such damages, the jury may consider every circumstance, present or future, which affected its then value.

2. EMINENT DOMAIN—*Measure of Damages—Loss of Profits in a Business Destroyed—Past Earnings of the Business.*—Loss of prospective profits in a business destroyed or damaged, where property is taken in the exercise of the power of eminent domain, is not an element for consideration in determining the market value, because a matter of speculation and conjecture, but the profits earned in a business conducted on the property taken are proper to be considered in determining the market value of the property.

3. EMINENT DOMAIN—*Loss of Profits—Case at Bar.*—In the instant case, a condemnation proceeding, defendant was the owner of a tract of land adjacent to a spur track of a railroad company. Before the building of the new highway upon the right of way condemned in this proceeding, it was necessary for one desiring to get from the public road to the railroad spur track to cross a strip of defendant's land. Defendant charged persons for this privilege of crossing his land and also for the privilege of storing on his land adjacent to the right of way of the spur track. His income from these charges averaged between $200.00 and $300.00 per annum. This income was practically lost to him by the building of the new road. Defendant contended that this loss should be considered as an element of damages and that in awarding $500.00 the commissioners had not done so. One of the commissioners testified that the damages were allowed as the difference between the value of the property before the road was run and its value after the road was run.

   *Held:* That the contention of the defendant that the commissioners proceeded upon a wrong principle in fixing the damages, was not well founded.

Error to a judgment of the Circuit Court of New Kent county, on a petition to condemn land. Judgment for petitioner. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. F. Hall* and *B. D. Peachy*, for the plaintiff in error.

*Ashton Dovell*, for the defendant in error.

Campbell, J., delivered the opinion of the court.

This writ of error is to a final judgment of the Circuit Court of New Kent county, pronounced in favor of the defendant in error, against the plaintiff in error, in a condemnation proceeding instituted by the plaintiff.

The record contains the following agreed statement of facts:

"The defendant is the owner of a tract of land containing eighty acres, more or less, situate in New Kent county, Virginia, on the north side of and adjacent to the main line of the Chesapeake and Ohio Railway Company between Providence Forge and Bottom's Bridge. The said railway company has for a considerable number of years maintained a spur track, or 'Y,' leading from its main line the distance of several hundred yards on to the defendant's land; the railway company owns the land on which the spur track is located, its right of way being forty feet wide. Until the construction of the new highway upon the right of way condemned in these proceedings, it was necessary for one desiring to get from the public road to the right of way of the railroad spur track to cross a narrow strip of the defendant's land. In other words, the 'Y' was surrounded by the defend-

ant's land. For a number of years he had made a practice of charging persons crossing his land for the purpose of reaching the 'Y' a certain sum in the nature of rent, and also charged for the privilege of storing on his land adjacent to the right of way of the 'Y' lumber and other articles intended for shipment. The Chesapeake and Ohio Railway Company's right of way on which the 'Y' is, is forty feet wide, and therefore when it became necessary for persons to store their materials outside of the right of way while awaiting transportation, the defendant received a rental for such storage privilege. His income from this business, including the privilege of crossing his land, has averaged between $200.00 and $300.00 per annum.

"The Chairman of the Highway Commission of Virginia instituted this proceeding for the purpose of condemning a right of way fifty feet wide through the defendant's land for the location thereon of a portion of the State highway system, being Project 257, route thirty-nine, of the State highway system, and being a portion of the new Richmond-Williamsburg highway. By virtue of the provisions of section 10, chapter 403, Acts of Assembly, 1922, and all acts amendatory thereof, the said highway was completed before the institution of these condemnation proceedings. As appears from the said plat, marked Exhibit 'A,' this new highway parallels the right of way of the main line of the Chesapeake and Ohio Railway and intersects each of the branches of the Chesapeake and Ohio 'Y'; and thereby enables those desiring to do so to reach the right of way of the 'Y' by driving down the new highway and thence on to the forty foot right of way of the "Y" without the necessity of traveling over the 'old road,' and without having to cross the defendant's land. The county road, designated as the 'old road' on said plat, is still open

to and used by the public, and 'Y' can still be reached therefrom by paying the defendant for the privilege of crossing his private land; but by reason of the natural desire of the public to escape the payment for the crossing privilege to the defendant, and the consequent use of the new highway in reference to the county road and the crossing of the defendant's land, the defendant no longer receives the revenue formerly collected by him for crossing privileges and receives only a small portion of the revenue formerly received by him for storing privileges. It is conceded that this cause was duly and regularly instituted by the filing of the necessary petition and plat; that the necessary notice of the application for appointment of commissioners was given the defendant and his wife, Lillian Parker; that the three commissioners, whose testimony is set out in the certificate, were duly appointed and properly qualified before entering upon their duties; that they were the only commissioners to act in these proceedings; that the defendant testified before the commissioners that his income from the rental of crossing and storage privileges in connection with the use of the 'Y' averaged between $200.00 and $300.00 per annum; that this income has been practically lost to him by reason of the location and construction of the new highway, and that he considered it an element of damages to be considered by the commissioners; that no part of the right of way of the new highway is located on that portion of the defendant's land formerly crossed by persons desiring to reach the 'Y,' but that a small portion of the right of way is on land formerly rented by the defendant for storage privileges; that the plaintiff withdraws his exceptions to the award by the commissioners of the sum of $500.00 for compensation for the 3.40 acres of land taken for right of way purposes; and that the only issue between the

parties is the following: Whether or not the commis-sioners proceeded upon wrong principles of law in con-sidering the loss of said rentals, or said income, as ele-ments in fixing the amount of the landowner's dam-ages?"

The sole question for determination is whether or not the commissioners proceeded upon the wrong principle of law in considering the loss of certain rentals, or cer-tain incomes, as elements in fixing the amount of the damages resulting to the residue of the defendant's land not taken in the condemnation proceedings.

The general rule for the ascertainment of damages in a proceeding where private property is taken, or dam-aged, for public uses, has been frequently stated in the decisions of this court.

[1] In *Town of Galax* v. *Waugh*, 143 Va. 225, 129 S. E. 507, Judge Burks said: "In *Richmond & M. R. Co.* v. *Humphreys*, 90 Va. 425, 435, 18 S. E. 901, an instruction was approved which told the jury that in ascertaining the damages to the residue of a tract, a part of which was taken for a public use, the measure of the plaintiff's damages was the difference between the market value of such residue at the time of taking and its market value after such taking, and, in ascertaining such damages, they might consider every circumstance, present or future, which affected its then value. See also Cooley's Const. Limitations (5th ed.) 702 and cases cited."

In *Charles* v. *Big Sandy R. Co.*, 142 Va. 527, 129 S. E. 388, the court quotes with approval the rule laid down by Keith, P., in *Richmond P. & C. R. Co.* v. *Chamblin*, 100 Va. 405, 41 S. E. 750, that in awarding damages to an owner for property taken, it is proper to consider the uses of the tract in question for all purposes and to award such damages as will be "a full and perfect equivalent for the property taken."

In the petition for a writ of error the contention of the plaintiff is set forth thus: "In the instant case it clearly appears from the testimony of the commissioners that the entire amount allowed for damages was intended to cover solely his loss in connection with the use of the 'Y'."

If this condition be sound then it follows that the award of the commissioners is erroneous.

[2] In *Hunter* v. *Ches. & O. R. Co.*, 107 Va. 166, 59 S. E. 418, 17 A. L. R. (N. S.) 124, it is said: "The authorities agree that loss of profits in a business destroyed or damaged, where property is taken in the exercise of the power of eminent domain, is not an element for consideration in determining the market value, because a matter of speculation and conjecture, while the profits earned in a business conducted on the property taken are proper to be considered in determining the market value of the property."

In 10 R. C. L. 145, it is said: "It generally has been assumed that injury to a business is not an appropriation of property which must be paid for. There are many serious pecuniary injuries which may be inflicted without compensation. It would be impracticable to forbid all laws which might result in such damage, unless they provided a *quid pro quo*. No doubt a business may be a property in a broad sense of the word, and property of a great value. It may be assumed that there might be such a taking of it as required compensation. But a business is less tangible in nature and more uncertain in its vicissitudes than the rights which the Constitution undertakes absolutely to protect. The diminution of its value is a vaguer injury than the taking or appropriation with which the Constitution deals."

In 10 Am. & Eng. Ency. L. (2d ed.), page 1114, it is

·said: "Injuries must be certain, not merely speculative.—In order for injuries to be considered such a taking as to entitle the owner to compensation, they must be actual injuries—injuries that reduce the market value of the property. These injuries and the consequent depreciation in value of the property must be susceptible of proof and capable of approximate measurement. They cannot merely be speculative, prospective or contingent.

"Damages to trade or business.—Therefore damages to trade or business are generally too remote to be considered in estimating the amount of compensation, because they depend too much upon contingencies that are uncertain or speculative."

In an examination of the evidence to see whether or not it is amenable to the objection urged, we cannot escape the conclusion that the evidence is not as clear as it should be. We would not say that the answers of the commissioners are contradictory, but rather that the answers evidence a misapprehension of some of the questions propounded.

However, when the evidence is carefully analyzed, we are of the opinion that the commissioners merely considered the rental of the land as one of the uses to which it could be put, and fixed the damages to the residue at $500.00.

In the examination of Homer Cecil, one of the commissioners, this appears:

"Q. Did you allow the $500.00 as the difference between the value before the road was run and its value after the road was run as damages?

"A. Why of course.

"Q. You have called it the loss of the spur.

"A. That is the way it was stated.

"Q. You simply used that term, the loss of the spur,

but you considered it the difference between the value before and since?

"A. Yes, sir."

The intention here manifested to take into consideration the question of rental as one of the elements, and not the sole basis of the award, is, we think, also manifested in the testimony of the other two commissioners.

[3] While it would be unwise to lay down a hard and fast rule applicable to every case, as to what elements properly enter into consideration in determining the market value of property sought to be condemned, we are of the opinion that, in the instant case, the contention of the plaintiff in error is not well founded, and that the commissioners were warranted by the evidence adduced, and from their personal examination of the land involved, in awarding the damages approved by the trial court.

*Affirmed.*