## 18073

SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Respondent, v. James W. BOLT and The Federal Land Bank, Appellants.

(131 S. E. (2d) 264)

412

*Messrs. Bolt & Bowen,* of Greenville, *Attorneys for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Grady L. Patterson, Jr., Assistant Attorney General,* of Columbia, and *W. H. Arnold,* of Greenville, *for Respondent,*

May 23, 1963.

LEWIS, *Justice*.

This is a condemnation proceeding brought by the respondent South Carolina Highway Department to acquire a right of way for the construction of a controlled-access highway across the property of the appellant James W. Bolt. Upon the trial of the case, a jury assessed the damages by reason of the taking of the right of way at the sum of $13,900.00, and the landowner has appealed, charging that the verdict was inadequate, that the lower court erred in refusing to permit the jury to consider as elements of damage loss of business and the cost of the construction of new buildings to replace those allegedly rendered worthless by the acquisition of the right of way, and that error was committed in certain respects in the charge to the jury.

The appellant owned a tract of land of 51.43 acres, located on the north side of a highway known as the Congaree Road about six miles from Greenville, South Carolina, upon which was located, among other improvements, his residence, barns, and three large chicken houses. The chicken houses were located about four hundred fifty feet from Congaree Road, had a layer capacity of 2500 hens, and the appellant had been engaged in the commerical egg business for about twelve years. On September 21, 1959, this proceeding was instituted by the respondent to acquire a right of way of approximately 250 feet in width across appellant's property in connection with the construction of U. S. Highway I-385, a controlled-access road. The right of way acquired in this proceeding crosses the appellant's land partly in a cut of

four to nine feet, comes within approximately 25 feet of one of the chicken houses, 31 feet of another, and 112 feet of the other, takes 7.18 acres of land and cuts off 2.6 acres, the frontage on Congaree Road, from the remainder of the tract.

Upon the trial of the case the appellant contended, and introduced testimony to show, that the most advantageous and profitable use of his property was for a commerical egg business, which he had been operating thereon for about twelve years, and that, due to the close proximity of his chicken houses to the new location of the highway, the noise from the traffic would so adversely affect the productivity of the chickens as to completely destroy his commerical egg business. He accordingly requested the trial court to instruct the jury that loss of his business was an element of damage to be considered in determining just compensation to him for the taking of the right of way by the respondent. This request was refused and the jury was instructed that "injury to or loss of business is not an appropriation of property which must be paid in a case of this kind." Claimed error in the refusal of the court to permit the jury to consider loss of business as an independent element of damage in determining the issue of just compensation to the appellant presents the first and basic question to be decided in this appeal.

Article I, Section 17 of the Constitution of this State provides that private property shall not be taken for public use without just compensation being first made therefor.

The Legislature has, in the enactment of Sections 33-135 and 33-136 of the 1962 Code of Laws, implemented the foregoing constitutional provision by providing a method of ascertaining the amount of just compensation to which the landowner is entitled by reason of the taking of his property by the State Highway Department for highway purposes. *Johnson v. S. C. State Highway Department,* 236 S. C. 424, 114 S. E. (2d) 591. These sections provide that in

determining just compensation to the landowner "only the actual value of the land to be taken therefor and any special damages resulting therefrom shall be considered", taking into consideration in determining the amount of just compensation any "benefits to be derived by reason of the proposed road construction."

The issues, therefore, to be determined in the trial of the case were (1) the actual value of the land taken from the appellant in the right of way being acquired, (2) any special damages resulting to the remainder of the land by reason of such taking, and (3) the benefits, if any, accruing to the remainder of the property by reason of the construction, the latter to be deducted from the total of the value of the land taken and any special damages found to exist.

The actual value of the land taken, of course, means the market value thereof. And "[m]arket value of property taken or injured for public use means the fair value of the property as between one who wants to purchase and one who wants to sell, its present value at a sale which a prudent owner would make if at liberty to fix the time and conditions of sale, not what could be obtained for it at a forced sale or under peculiar circumstances, nor a value obtained from the necessities of another. 20 C. J. 727." *Howell v. State Highway Department,* 167 S. C. 217, 166 S. E. 129.

The trial judge correctly instructed the jury that "[t]he landowner [is] entitled to compensation upon the basis of the most advantageous and profitable use of [his] land. In estimating the value of property condemned, all of the uses to which it may be applied, or for which it is adapted, which affect its value in the market, are to be considered, and not merely the condition it is in at the time and the use to which it was then applied by the owner." *City of Orangeburg v. Buford et al.,* 227 S. C. 280, 87 S. E. (2d) 822; 29 C. J. S. Eminent Domain, § 160.

In addition to the actual value of the land taken, where a portion of a tract of land is taken for such public use, the landowner is entitled to compensation for any special damages resulting to the remainder thereof. The special damages referred to in the above statutes relate to injury or damage to the remainder of the property from which a portion is taken. They would include any damage or any decrease in actual value of the remainder of the land-owner's property which are the direct and proximate consequence of the acquisition of the right of way. In other words, as a general rule, special damages include all injuries or damages which cause a diminution in the value of the remaining property. As stated in 18 Am. Jur. 905, Section 265:

"When part of a parcel of land is taken by eminent domain, the owner is not restricted to compensation for the land actually taken; he is also entitled to recover for the damage to his remaining land. In other words, he is entitled to full compensation for the taking of his land and all its consequences; and the right to recover for the damage to his remaining land is not based upon the theory that damage to such land constitutes a taking of it, nor it there any requirement that the damage be special and peculiar, or such as would be actionable at common law; it is enough that it is a consequence of the taking. The entire parcel is considered as a whole, and the inquiry is, how much has the particular public improvement decreased the fair market value of the property, taking into consideration the use for which the land was taken and all the reasonably probable effects of its devotion to that use."

Therefore, where a portion of a tract of land is taken, the damages recoverable in an eminent domain proceeding brought under the foregoing statutes are limited to the value of the land actually acquired for the right of way and any injury resulting to the remaining property. The only subject of the condemnation in this case under the statute, Section 33-122 of the 1962 Code of Laws, was the real property of the appellant and, in such cases, it is the

general rule that injury to or loss of business resulting from the taking is not considered as an element of damage in eminent domain proceedings in the absence of a statute expressly allowing such damages. 18 Am. Jur., Eminent Domain, Section 259; 29 C. J. S., Eminent Domain, § 162.

However, in estimating the value of the property condemned, the landowner is entitled to compensation upon the basis of the most admantageous and profitable use of his land. And, as stated in the case of *Housing Authority of City of Bridgeport v. Lustig,* 139 Conn. 73, 90 A. (2d) 169, 171:

"Accordingly, the better reasoned cases hold that, although the value of a business which is being conducted upon the real property condemned may not ordinarily be added to the market value of the realty as damages for the taking, the fact that a given business is in operation on the property should be taken into consideration in determining the market value of the real property if in truth it is a factor in establishing that market value—if, that is, the use of the real property for that purpose enhances the value of it. *Edmands v. City of Boston,* 108 Mass. 535, 549; *King v. Minneapolis Union Ry. Co.,* 32 Minn. 224, 226, 20 N. W. 135; *Pittisburgh, v. & C. Ry. Co. v. Vance,* 115 Pa. 325, 334, 8 A. 764; *Chairman of Highway Commission v. Parker,* 147 Va. 25, 29, 136 S. E. 496; *Voigt v. Milwaukee County,* 158 Wis. 666, 670, 149 N. W. 392. In particular, it is proper to take into consideration the existence of a going business on the land in question as indicative of the highest economic use to which the land may be put. *State ex rel. La Prade v. Carrow,* 57 Ariz. 429, 433, 114 P. (2d) 891; *Philbrook v. Berlin-Shelburne Power Co.,* 75 N. H. 599, 74 A. 873; *Hunter's Administrator v. Chesapeake & O. Ry. Co.,* 107 Va. 158, 165, 59 S. E. 415, 17 L. R. A., N. S., 124."

In accord with the foregoing rule the appellant was permitted to introduce testimony to the effect that he had been operating a successful commercial chicken farm on the property in question for a period of twelve years,

that the property had been developed for this business, and that this represented its most advantageous and profitable use. While the lower court refused to allow loss of business as an independent element of damage, the jury was instructed that the foregoing testimony, together with the testimony as to the injury to such business by reason of the acquisition of a part of the property, might properly be considered in determining the fair market value of the property before and after the taking. The lower court, after using a hypothetical gasoline filling station site and business as an illustration, properly instructed the jury as follows:

"I charge you that, using the filling station as an example, if you find that that was a good location for the filling station and that it was the kind of a location that was susceptible of and doing a good business you could take that into consideration in determining what was the fair, the reasonable fair market value of that filling station site, because a good location susceptible of doing a good business and actually doing a good business would sell on the fair market for more than one which was not capable of carrying on a business there. And so, getting back to our own case now, if you find that in this case this was a good chicken farm you could take that into consideration in determining what its reasonable fair market value was before the taking, and if you find that it is not a good chicken farm after the road was constructed, then you could take that into consideration in determining what that property was worth just after the taking."

The lower court properly refused to allow loss of business as an independent element of damage in this case, and properly limited the consideration by the jury of such testimony to its effect upon the market value of the property.

The next question relates to the refusal of the trial judge to allow appellant to introduce testimony as to the cost of constructing new buildings to replace those which he claimed were worthless because of the location of the new highway. The appellant introduced testimony

to the effect that to be able to continue to utilize his property as a commerical egg farm it would be necessary to locate his chicken houses farther from the new highway and the noise created by the traffic thereon, and that due to the nature and type of construction of these buildings they could not be moved to another location. Since the appellant so contended, he sought to introduce testimony as to the cost of building new chicken houses at another location on his property so as to be able to continue to utilize his property for the operation of a commercial egg farm. Objection was sustained to the introduction of this testimony and the appellant charges that the lower court was in error in so doing.

We think that the lower court properly excluded such testimony. The buildings in question were not located on the right of way being acquired, the nearest being about 25 feet from the edge thereof. While the appellant was not permitted to prove the cost of building new chicken houses, he was permitted to testify as to the value of these buildings before the taking, that they could not be moved, and that they were worthless after the construction of the new highway.

As pointed out above, the measure of damages was the effect of such construction upon the market value of the remainder of the tract. Therefore, as a general rule, where a part of a tract of land is taken for highway purposes in condemnation proceedings and damages are claimed by reason of the close proximity of the highway to buildings located on the remainder of the property, such damages are measured by the extent to which the value of the remaining property has been depreciated by reason of the proximity of the public improvement to the existing buildings. Damage to the buildings must be considered in connection with the realty of which they are a part. *State Highway Department v. Amicks' Estate,* 199 S. C. 112, 18 S. E. (2d) 633.

When the appellant was permitted to introduce testimony as to the value of the buildings before and after the public improvement for the purposes for which they were used and

adapted, the jury was afforded ample criterion for determining the damages to the remaining property by reason of the proximity of the new highway to the buildings.

The appellant also assigns as error the instruction by the court to the jury that "you cannot consider loss of profits which the landowner may or may not have suffered in arriving at your verdict," upon the ground that loss of profits was not an issue in the case and such charge was confusing to the jury. While the appellant made no claim for loss of profits from his business as such, he did seek damages for the loss of such business. The court properly instructed the jury that loss of business was not an independent element of damage for which recovery could be had and, since the appellant admittedly made no claim for loss of profits, it is inconceivable that he could have been prejudiced by the court simply telling the jury that loss of profits from the business was also not a proper element of damage. As stated in *Shearer v. DeShon,* 240 S. C. 472, 126 S. E. (2d) 514: "It is the duty of the trial Judge to state to the jury the nature of the action and the issues arising in the trial thereof. He may charge as to what is not an issue and give a cautionary instruction thereabout if such does not prejudice either party."

It is also charged that the trial court erred in giving the following instruction to the jury:

"I charge you that the landowner is not entitled to any damages because of the fact that the road being constructed through his property is what is generally referred to as a non-access road or highway."

Highway I-385, for which the present right of way was acquired, is a part of the interstate highway system and is a controlled-access facility within the meaning of Section 33-211 *et seq.* of the 1962 Code of Laws, regulating the establishment and construction of controlled-access highways. Prior to the construction of Highway I-385, appellant's land was in one tract and fronted on a public highway known

as Congaree Road, to which appellant had direct access from his property. After the new highway was constructed, a 2.6 acre tract fronting on Congaree Road was cut off from the balance of appellant's land, so that now the remainder of his property, upon which is located all of his buildings, is deprived of access to a highway except through frontage or auxiliary roads constructed along the new controlled-access highway. There was testimony that access to appellant's property was now more circuitous by reason of the construction of Highway I-385 than before.

Section 33-217 of the 1962 Code of Laws, which deals with the rights of access of abutting property owners to a controlled-access highway is as follows:

"The Department may acquire such lands and property, including rights of access, as may be needed for controlled-access facilities, by gift, devise, purchase or condemnation, in the same manner as now or hereafter authorized by law for acquiring property or property rights in connection with other State highways. *Along new highway locations abutting property owners shall not be entitled, as a matter of right, to access to such new locations, and any denial of such rights of access shall not be deemed as grounds for special damages.*" (Emphasis added.)

The record before us shows that the controlled-access highway across the property of the appellant was along a new location and did not replace any highway or street to which his property formerly had access. Under the provisions of Section 33-217, *supra,* the appellant as an abutting property owner was not entitled, as a matter of right, to direct access to the new highway, and the fact that he was denied direct access could not within itself be considered a ground for the allowance of special damages.

However, as stated by the annotator in 43 A. L. R. (2d) at page 1080: "Although the creation of a new limited-access highway does not ordinarily create any right of access in abutting landowners which must be condemned, it has been

recognized that such highways impose a peculiar burden upon adjoining land which may be considered in computing 'severance' damages." In other words, the severance of appellant's land into two tracts and depriving him of his former direct access to an unrestricted highway, are elements properly considered in determining just compensation in so far as such facts affect the market value of the remaining lands, and the non-access character of the highway is a relevant consideration on the issue of such consequential or severance damages. This is true not on any theory of right of access of the landowner being denied to the new road, but on the basis of damage to the market value of the property taken from the severance of the land by a non-access highway. *State Highway Commission v. Burk*, 200 Or. 211, 265 P. (2d) 783.

Of course, whether the market value of the remaining land was affected by the severance of the appellant's land by the controlled-access highway was a matter for the jury to decide under all of the evidence.

The instruction in question was no doubt based upon the provisions of Section 33-217, *supra,* and was designed to eliminate from the consideration of the jury, as an element of damage, the fact that the appellant was denied direct access to the new highway. Taken alone, it did not cover the possibility of depreciation in value of the remaining property by reason of the non-access character of the highway which separated the appellant's land into two parcels or from being deprived of his former access to an unrestricted highway. However, in other portions of the charge the court instructed the jury that, in determining the damages to the landowner, they must determine the value of the land actually taken and then add to such value the damage caused to the remaining land by reason of the acquisition of his property and the construction of the road thereon. The jury was, therefore, permitted to consider as an element of damage any depreciation in value of the remaining lands by reason of the controlled-access character of the new highway

due to the severance of the property and the deprivation of the former direct access to Congaree Road, an unrestricted-access highway. Considering the charge to the jury as a whole, we think that the issues were fairly submitted to the jury.

The last question relates to the refusal of the trial judge to grant the appellant's motion for a new trial on the ground that the verdict of the jury was inadequate. The claim of the appellant that the verdict was inadequate is based upon the premise that the trial court erred in failing to permit the jury to consider as elements of damage loss of business and the cost of constructing new buildings. The appellant correctly concedes that, if the issues were properly submitted to the jury, the disposition of this motion rested within the discretion of the trial court. Therefore, having held that the issues were properly submitted to the jury, further consideration of this ground of appeal is rendered unnecessary.

Affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.