19765

Myrtie C. BARSH, Respondent, v. CHRYSLER CORPORATION, Appellant

(203 S. E. (2d) 107)

*Messrs. H. Simmons Tate, Jr., J. Donald Dial, Jr.,* and *Manton M. Grier,* of *Boyd, Knowlton, Tate & Finlay,* Columbia, *for Appellant,*

130

*Thomas Dewey Wise, Esq.,* of *Way, Burkett & Wise,* Charleston, *for Respondent,*

*H. Simmons Tate, Jr., J. Donald Dial, Jr.,* and *Manton M. Grier,* of *Boyd, Knowlton, Tate & Finlay,* Columbia, *for Appellant,* in Reply.

January 30, 1974.

LITTLEJOHN, Justice:

The plaintiff-respondent, Myrtie C. Barsh, brought this action against the defendant-appellant, Chrysler Corporation, seeking to recover $7,500.00 damages for the destruction of her Chrysler automobile and personal property by fire *. The case was tried based on the allegations of the plaintiff that there was a breach of warranty on the part of the defendant that proximately caused the fire and the resulting damage. The defendant denied that the automobile was defective. All issues were submitted to the jury, which returned a verdict in favor of the defendant. Upon return of the verdict, the jury was immediately polled at plaintiff's request, and each juror stated that the verdict was his own. Plaintiff then moved for judgment *n. o. v.* or for a new trial, which was denied.

Later the trial judge, on motion of counsel for the plaintiff, granted a new trial on the ground that the jury was guilty of misconduct. The defendant has appealed, alleging error on the part of the trial judge (1) in setting aside the jury verdict and granting a new trial on the testimony of a juror concerning the jury's deliberations, (2) in failing to conduct a full and fair inquiry into the jury deliberations sufficient to ascertain the truth, and (3) in failing to give the defendant adequate notice or an opportunity to be heard

---

* $5,700.00 of this amount represented a subrogation claim of plaintiff's insurance carrier, which paid the automobile loss.

before an adverse determination was made on the question of whether the jurors could be empaneled for the purpose of inquiring into the deliberations.

The motion for a new trial was presented to the trial judge after it was shown that the forelady of the jury had stated that the jury returned a verdict for the defendant because the members of the jury believed that Mrs. Barsh's vehicle was covered by insurance and to render a verdict in her favor would give her a double recovery.

When the motion was made, the jurors had been dismissed from the case but were still members of the jury panel and in attendance at court. They were reseated in the jury box and sworn. The judge proceeded to question the forelady. In essence she testified that the jurors discussed the insurance issue and that they felt that consideration of the insurance question was proper and gave it much, if not controlling, weight.

He also asked the other jurors if they wanted to make a statement. The reporter indicated a "negative response." He then asked if they disagreed with the substance of the forelady's testimony. The reporter again indicated a "negative response."

Thereafter, the judge took the motion for a new trial under advisement. Counsel supplied briefs and the judge filed his order setting the verdict aside and granting a new trial, holding:

"The misconduct of the jury was not in rendering the verdict that it did, but in the fact that the verdict had no basis whatsoever in the evidence. It rested wholly on a consideration that was improper, and not a part of the evidence.

"Plaintiff is entitled to a new trial because of the misconduct of the jury, and this Court so concludes."

Accepting the testimony of the forelady of the jury was contrary to the holding in a long line of cases in this State,

following the general rule, that a juror's testimony is not admissible to prove either his own misconduct or that of fellow jurors.

In *State v. Parris,* 163 S. C. 295, 161 S. E. 496 (1931), statements were made in open court, before the incest trial began, inferring that the defendant had given his own lawyer a mortgage over property which he did not own. After the defendant was convicted and sentenced, counsel (newly employed) came into the case and procured a statement from six of the convicting petit jurors, who had tried the case, to the effect that the information received by them as to defendant's conduct in giving the mortgage to his attorney influenced them in reaching a verdict of guilty. A written request from nine of the jurors was also presented, requesting a new trial because they had grave doubts as to the defendant's guilt. In affirming the lower court's refusal of a new trial, this Court said:

"The statements of the jurors, filed in the lower court, have been submitted in the record to this court. As to these statements, we desire to say that they should not have been presented to, or received by, the court. Even if they had been sworn to, it was improper for them to have been presented or received. In fact, the jurors should not have signed these statements, which, perhaps, they did without understanding that their action was improper. The zealous young counsel, who has, with much ability, presented his client's cause in this court in his effort to secure, what he conceived to be, justice in that client's behalf, committed an error, which we know was absolutely unintentional on his part when he secured and offered the jurors' statements to the court. Without reflecting, or with the slightest intention to reflect, upon the counsel or any of the jurors, we must nevertheless express our disapproval of what was done in this regard. We invite attention to the language of the distinguished jurist, David L. Wardlaw, in *Smith v. Culbertson,* 9 Rich. (43 S. C. L.) 106, where he said: 'The mischiefs, the delays, the arts, the scandal likely to ensue, come natur-

ally to our thoughts, when we imagine encouragement given to the pursuit of jurors by disappointed suitors, for the purpose of obtaining affidavits to invalidate verdicts regularly rendered.' See, also, *State v. Long,* 93 S. C. 502, 77 S. E. 61."

In *State v. Wells,* 249 S. C. 249, 153 S. E. (2d) 904 (1967), a juror named Murray testified that in the course of the deliberations juror Ricketts had taken him in the next room and talked to him. He further testified "that Ricketts' statement had changed his opinion about the case and expressed the conclusion that Ricketts' opinion thereabout was based on his prior knowledge about Wells rather than the evidence in the case." The trial judge disregarded the evidence and denied a new trial. In affirming the denial, this Court said:

"While the trial judge heard the testimony of Murray, he afterwards concluded that he was in error in even hearing it. In denying the motion for a new trial predicated on the testimony of Murray, His Honor, in a comprehensive order, reviewed at some length the controlling authorities. We will not lengthen this opinion unduly by reviewing them here. His Honor quoted the followng from 39 Am. Jur. 197, New Trial, Sec. 198,

" 'The testimony or affidavits of jurors, according to the generally recognized practice, will not be received on the hearing of a motion to set aside a verdict on the ground of mistake, irregularity or misconduct on the part of the jury or some one or more of the panel.'

"In 53 Am. Jur. 769, Trial, Sec. 1105, it is said,

" '* * * it is a long-established and generally accepted doctrine, except where modified by statute, that testimony or affidavits of jurors impeaching a verdict rendered by them will not be received where the facts sought to be shown are such as inhere in the verdict.'

"An unbroken line of decisions in this state is in accord with the foregoing general rules. *Smith v. Culbertson,* 9

Rich. (43 S. C. L.) 106; *State v. Long,* 93 S. C. 502, 77 S. E. 61; *State v. Parris,* 163 S. C. 295, 161 S. E. 496."

Most of the cases wherein unsuccessful litigants have sought a new trial on the basis of misconduct of jurors arose by way of affidavits submitted to the court. Here there were no affidavits, but the vice, which the courts have attempted to avoid, is just as present where the juror is examined in open court, and we think the same principles apply.

The verdict of the jury is normally affected by many considerations. Perhaps the thinking of no two jurors is ever exactly the same. The verdict of a jury is the collective thinking of all jurors combined. Since litigation must be finalized, the courts have, as a policy matter, adopted the rule of refusing to allow the testimony of a juror to impeach the verdict.

Having decided that the evidence should not have been received, it necessarily follows that the lower court must be reversed. We are not therefore treating the other exceptions. We think, however, one of the exceptions emphasizes the wisdom of the rule to which we adhere. The defendant argues that even if the evidence was admissible, the trial court's inquiry into the jury's deliberation was not a fair and full hearing sufficient to ascertain the truth. It can be logically argued that if it is appropriate to question one juror, it is appropriate to question all jurors. And if it is appropriate for the judge to question the juror, counsel for the movant should be allowed to question him, and opposing counsel should be allowed to cross-examine. And if a new trial should be ordered, the same routine could be repeated after the next trial.

The order of the lower court granting a new trial is Reversed.

Moss, C .J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.