2023

SOUTH CAROLINA DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Condemnor, Respondent v. H.C. GALBREATH, Landowner, Appellant, and First National Bank of Pickens County, Other Condemnee-Mortgagee.

(431 S.E. (2d) 625)

Court of Appeals

*J. Redmond Coyle* and *R. Murray Hughes*, Pickens, *for appellant.*

*Linda C. McDonald*, Columbia, *for respondent.*

Heard May 10, 1993.

Decided June 1, 1993.

GOOLSBY, Judge:

In this condemnation case, the South Carolina Department of Highways and Public Transportation condemned part of the property upon which H.C. Galbreath, the landowner, owned and operated a Western Auto Store. The jury awarded Galbreath $13,001, and he moved for a new trial. The trial court denied the motion, and Galbreath made a second new trial motion based upon alleged disqualification of one of the jurors. The court denied that motion and Galbreath appeals. We affirm.[1]

## I.

Galbreath first argues the trial court erred in granting the Department's motion *in limine* to exclude the testimony of an economist, Charles Alford. Galbreath intended to call Alford to testify that Galbreath would lose about $68,000 over his lifetime from the loss of an area he used to display and sell riding lawn mowers and garden tractors. Galbreath recognized lost profits are not recoverable as an independent element of damage, but he wanted to present the evidence to establish that his business was a "good" business, that is, profitable, so that the jury could assess damages based upon the property's highest and best use. The trial court ruled the evidence of exact profits was irrelevant but that Galbreath could present general evidence that sales were made and profits would be lost because of his inability to display tractors and riding mowers for sale.[2]

---

[1]Because oral argument would not aid the Court in resolving the issues, we decide this case without oral argument.

[2]We note that Galbreath did not subsequently proffer Alford's testimony during the trial, but merely relied upon the *in limine* ruling in presenting his case. The Supreme Court has indicated that even where a motion *in limine* is granted, it is not the final ruling on the admissibility of the evidence. *State v. Floyd,* 295 S.C. 518, 369 S.E. (2d) 842 (1988); *cf. Parr v. Gaines,* — S.C. —, 424 S.E. (2d) 515 (Ct. App. 1992). In *Floyd,* the Supreme Court stated:

Galbreath subsequently presented the testimony of Louis White, a real estate appraiser. White valued the property prior to the taking for First Federal Savings Bank in connection with a loan application Galbreath made. He stated the property had a value of $164,000 before the taking. White stated he considered the loss of the display area for the tractors and riding mowers as well as the lost parking in arriving at a figure of $28,000 for diminution in the property's value.

Galbreath testified he sold $60,000 worth of tractors for fifteen years, but because of the condemnation he lost space for the display of tractors. He stated he "[had] reduced $30,000 worth of tractors from Toro Company, and . . . ha[d] reduced [his] Western Auto Sears tractors from sixty thousand to forty thousand for 1992." Galbreath further testified he had built his tractor sales to a point where he sold between 38 and 40 percent of the Pickens County market prior to the taking. Galbreath projected a 25 percent decrease in overall sales for 1992. He stated a 40 percent cut in tractor sales would reduce his overall profit by 60 percent. Finally, Galbreath testified the value of his business had been "cut in half" because of the condemnation and his property had suffered $100,000 in damages.

In *South Carolina State Highway Dep't v. Bolt*, 242 S.C. 411, 131 S.E. (2d) 264 (1963), the Supreme Court stated:

> [A]lthough the value of a business which is being conducted upon the real property condemned may not ordinarily be added to the market value of the realty as damages for a taking, the fact that a given business is in operation on the property should be taken into consideration in determining the market value of the real property if in truth it is a factor in establishing that market value—if, that is, the use of the real property for that purpose en-

We caution the Bench and Bar that these pretrial motions are granted to prevent prejudicial matter from being revealed to the jury, but do not constitute final rulings on the admissibility of evidence.

295 S.C. at 521, 369 S.E. (2d) at 843 (emphasis added).

We cannot tell whether Galbreath raised this issue in his first new trial motion since the motion is not in the record. Because the Department did not argue that the issue was not preserved, and because of our disposition of this issue, we do not decide whether Galbreath failed to preserve the issue under the circumstances of this case; however, we do wish to alert counsel to the Supreme Court's language in *Floyd*.

hances the value of it. In particular, it is proper to take into consideration the existence of a going business on the land in question as indicative of the highest economic use to which the land may be put.

*Id.* at 418, 131 S.E. (2d) at 267 (citations omitted) (quoting *Housing Auth. of Bridgeport v. Lustig*, 139 Conn. 73, 90 A. (2d) 169, 171 (1952)). The Supreme Court added:

> In accord with the foregoing rule the appellant was permitted to introduce testimony to the effect that he had been operating a successful commercial chicken farm on the property in question for a period of twelve years, that the property had been developed for this business, and that this represented its most advantageous and profitable use. While the lower court refused to allow loss of business as an independent element of damage, the jury was instructed that the foregoing testimony, together with the testimony as to the injury to such business by reason of the acquisition of a part of the property, might property be considered in determining the fair market value of the property before and after the taking.

The lower court . . . properly instructed the jury as follows:

> ". . . [I]f you find that in this case this was a good chicken farm you could take that into consideration in determining what its reasonable fair market value was before the taking, and if you find that it is not a good chicken farm after the road was constructed, then you could take that into consideration in determining what that property was worth just after the taking."

The lower court properly refused to allow loss of business as an independent element of damage in this case, and properly limited the consideration by the jury of such testimony to its effect upon the market value of the property.

*Id.* 242 S.C. at 419, 131 S.E. (2d) at 267-68.

> The conduct of trial, including the admission and rejection of testimony, is largely within the trial judge's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion or the commission of legal error that results in prejudice for the ap-

pellant. *State v. Johnson*, — S.C. —, —, 427 S.E. (2d) 718, — (Ct. App. 1993). Even if the trial court erred in excluding evidence, there is no reversible error where the testimony would have been cumulative. *Goddard v. Fairways Development General Partnership*, — S.C. —, —, 426 S.E. (2d) 828 (Ct. App. 1993).

We hold, therefore, that even if Alford's testimony would have been admissible under *Bolt* with a limiting instruction that it could only be considered for evaluating whether he had a "good" business prior to the taking, the testimony would have been cumulative in that regard to the testimony of White (loss of $28,000 market value considering loss of display area of tractors and access to the business) and Galbreath (sales of 38 percent to 40 percent in Pickens County prior to the taking; business value cut in half by the taking; $100,000 damage to business by the taking; loss of $30,000 annual sales in tractors, where sales were $60,000). The substance of Alford's testimony would have been that Galbreath's tractor sales were good and that his business was "a good tractor business." This was also the substance of Galbreath's testimony and it formed at least part of the basis for White's valuation. Thus, the jury already had evidence that Galbreath's tractor business was a "good" business prior to the taking.

Accordingly, we find no reversible error in the exclusion of the testimony.

## II.

After the trial, Galbreath submitted an affidavit in which he stated he was speaking with his attorney in the corridor outside the courtroom when Christine Butler, one of the jurors, approached them and indicated she was sorry that the verdict was not larger. Galbreath averred in his affidavit:

> Ms. Butler went on to say that the problem with the verdict and the reason it took the jury approximately one and one-half hours to make a decision was that a certain juror who sat on this jury was biased. She indicated that a juror named Ricky B. Adams had announced from the beginning that he was biased against my position and that he would not agree to any amount of money. She fur-

ther indicated that she did not feel that he should have sat on the jury and she requested the jury foreman to come back into the courtroom and determine if he could be removed from the jury for the purpose of the jury continuing deliberations.

Galbreath claimed the verdict was inadequate and should be set aside based upon the juror Adams' misconduct. Galbreath added:

The Court examined the jurors and asked if anyone had any possible bias against the Department of Highways and Public Transportation or the Land Owner in this case and each juror including Ricky B. Adams indicated that they did not. Inasmuch as this was an untruthful position on the part of this juror, the Land Owner herein requests that he be granted a new trial.

The trial court held Galbreath failed to make an adequate showing of the fact of disqualification and denied the motion. We agree.

In *Barsh v. Chrysler Corporation,* 262 S.C. 129, 203 S.E. (2d) 107 (1974), the Supreme Court stated:

The verdict of the jury is normally affected by many considerations. Perhaps the thinking of no two jurors is ever exactly the same. The verdict of a jury is the collective thinking of all jurors combined. Since litigation must be finalized, the courts have, as a policy matter, adopted the rule of refusing to allow the testimony of a juror to impeach the verdict.

*Id.* at 135, 203 S.E. (2d) at 109. Therefore, since Galbreath is not allowed to impeach the jury's verdict with testimony or an affidavit from one of the jurors, he clearly cannot do so with his own affidavit relating secondhand what a juror purportedly told him.

Secondly, the affidavit relates the unsworn testimony of juror Butler, which is not competent under the circumstances. *Morris v. Jensen,* — S.C., —, 420 S.E. (2d) 710 (Ct. App. 1992).

Furthermore, even if the court would be allowed to accept the juror's unsworn statement in this fashion, the statement does not indicate juror Adams harbored any bias at the time

of *voir dire;* in fact, the statement indicates juror Adams stated his feelings at the beginning of deliberation.

Finally, even if the statement is true, there is no evidence that juror Adams exerted undue influence over the rest of the panel. *Morris v. Jensen,* — S.C. —, 420 S.E. (2d) 710 (Ct. App. 1992). The statement is far from a convincing demonstration that the verdict was based on jury bias rather than the evidence at trial. *Id.* The statement indicates juror Adams did not want to give Galbreath "any amount of money," yet after an hour and a half of deliberations the jury awarded him $13,001, an amount that fell within the range of the evidence presented.[3]

Affirmed.

SHAW and CURETON, JJ., concur.