17941

Jimmie H. SHEARER, as Administrator of the Estate of Glenda Shearer, Plaintiff-Respondent, v. Raymond DeSHON and Charlotte Faye DeShon, Defendants-Appellants, and William M. Lyle, Defendant-Respondent.

(126 S. E. (2d) 514)

*Messrs. Henderson, Salley & Cushman,* of Aiken, *for Defendants-Appellant,*

474

*Messrs. Toole & Toole,* of Aiken, *for Plaintiff-Respondent,*

*Henry Busbee, Esq.,* of Aiken, *for Defendant-Respondent.*

July 9, 1962.

Moss, Justice.

This is an action to recover damages for the alleged wrongful death of Glenda Shearer and brought by the administrator of her estate for the benefit of her surviving parents. Section 10-1951 *et seq.,* 1952 Code of Laws of South Carolina.

It is alleged in the complaint that Glenda Shearer, a minor sixteen years of age, died on October 20, 1960, and that her death was due to and proximately caused by the joint, concurrent, combined and several acts of negligence, carelessness, heedlessness and willfulness of Charlotte Faye DeShon, Raymond DeShon, the appellants herein, and William M. Lyle, a respondent herein. It is alleged that Glenda Shearer was riding as a guest in an automobile owned by Raymond DeShon and operated by his minor daughter, Charlotte Faye DeShon. It is further alleged that the said Charlotte Faye DeShon was a member of the household of her father and that he had provided the automobile in question for the use and convenience of his family, including his said daughter. The complaint also alleges that the death of Glenda Shearer was caused and occasioned by the collision of the automobile in which she was riding as a guest with an automobile owned and operated by William M. Lyle.

It is alleged that on October 19, 1960, at approximately 8:40 P. M., it being a dark, cloudy and rainy night, Glenda Shearer was riding as a guest passenger in the front seat of a 1957 Volkswagen automobile owned by Raymond DeShon and operated by his minor daughter, in a northerly direction along S. C. Highway No. 421, at or near the Town of Gloverville, and that the said automobile was being driven in

excess of a speed which was reasonable and proper under the circumstances then and there existing, was being driven without maintaining a proper lookout for other vehicles, and without having the said automobile under proper control. It was also alleged that William M. Lyle was driving his automobile upon the occasion in question at a speed in excess of that which was reasonable and proper under the circumstances then and there existing, in driving his automobile without maintaining a proper lookout for other vehicles upon said highway, and in driving his said automobile without having the same under proper control, and in improperly making a left turn and failing to yield the right of way when under a duty so to do.

The respondent Lyle filed a separate answer and denied any wrongful conduct on his part that brought about the injury and death of the said Glenda Shearer. He further alleged that if respondent's intestate lost her life as a result of carelessness, negligence, heedlessness, recklessness, willfulness and wantonness of any person, the same was due to and solely occasioned by the automobile being operated by Charlotte Faye DeShon. It is further alleged that the death of respondent's intestate was due to an unavoidable accident.

The appellants, by their answer, denied any wrongful conduct on their part that brought about the injury and death of the said Glenda Shearer and affirmatively allege that her death resulted solely and proximately from the negligence, recklessness, willfulness and wantonness of William M. Lyle. The appellants, by way of further defense, assert that the said Glenda Shearer was guilty of contributory negligence, recklessness, willfullness and wantonness, in consciously remaining in the automobile driven by Charlotte Faye DeShon, without objection, and without making any effort to remonstrate with the driver thereof or to remove herself therefrom if, as is alleged, Charlotte Faye DeShon was driving said automobile in an improper manner. The appellants separately filed a cross action pursuant to Section 10-707 of

the 1952 Code of Laws, against William M. Lyle, alleging that each sustained either personal injury or property damage as a result of his negligence, recklessness, willfulness and wantonness. Lyle filed a reply to the cross actions.

The case came on for trial before the Honorable J. B. Ness, and a jury, at the June 1961 term of the Court of Common Pleas for Aiken County, and resulted in a verdict in favor of the respondent against the appellants and William M. Lyle in the sum of $11,000.00 actual damages, apportioned in the amount of $10,000.00 against the appellants, and $1,000.00 against Lyle. There was a verdict in favor of Lyle on the cross actions of the appellants.

The appellants, at appropriate stages of the trial, moved for a nonsuit, directed verdict, judgment *non obstante veredicto,* and alternatively for a new trial, on the ground that neither respondent's evidence nor the entire evidence was sufficient to support the reasonable inference that the death of Glenda Shearer was caused by the heedlessness and recklessness of the appellants. All of these motions were refused by the trial Judge. There is no appeal on the part of William M. Lyle.

In considering whether the court below erred in refusing the several motions made by the appellants upon the ground that there was no evidence of actionable heedlessness or recklessness on the part of the appellants, we must view the evidence and the inferences fairly deducible therefrom in a light favorable to the respondent. If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. *Green v. Bolen,* 237 S. C. 1, 115 S. E. (2d) 667, *and Spencer v. Kirby,* 234 S. C. 59, 106 S. E. (2d) 883.

It is the contention of the respondent that his intestate was riding as a passenger in an automobile owned by Raymond DeShon and operated by Charlotte Faye DeShon. Since the respondent's intestate was a guest passenger in said automobile, the action is governed by

Section 46-801 of the 1952 Code of Laws of South Carolina, which provides that:

"no person transported by an owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such motor vehicle or its owner or operator for injury, death or loss in case of an accident unless such accident shall have been intentional on the part of such owner or operator or caused by his heedlessness or reckless disregard of the rights of others."

The foregoing section, as construed by this Court, restricts liability to cases where injury has resulted from either intentional or reckless misconduct of the owner or operator of the motor vehicle. *Fulghum v. Bleakley,* 177 S. C. 286, 181 S. E. 30; *Brown v. Hill,* 228 S. C. 34, 88 S. E. (2d) 838; *Saxon v. Saxon,* 231 S. C. 378, 98 S. E. (2d) 803; *Benton v. Pellum,* 232 S. C. 26, 100 S. E. (2d) 534, and *Jackson v. Jackson,* 234 S. C. 291, 108 S. E. (2d) 86. This Court has also held, under the guest statute, that the only duty that the operator of an automobile owes to a guest passenger is not to injure her willfully or by conduct in reckless disregard of her rights. *Johnson v. Griffin,* 228 S. C. 526, 90 S. E. (2d) 913.

It appears from the evidence that on October 19, 1960, a number of students had assembled at Langley-Bath-Clearwater High School for the purpose of practicing a class play. When this practice was over, Charlotte Faye DeShon, Glenda Shearer and Sandra Heath left the high school for the purpose of going to a "bon fire". Charlotte Faye DeShon was driving her father's automobile. Glenda Shearer was in the front seat and Sandra Heath was in the back seat. The night was dark and foggy and it was raining. Leaving the high school premises, the car turned right on Highway No. 421 and proceeded towards Gloverville. The scene of the collision was on a curve on said highway near Freeman's Filling Station. The posted speed limit at that point was

thirty-five miles per hour. Sandra Heath testified that just prior to the collision of the car in which she was riding, with the one driven by William M. Lyle, that Glenda Shearer was sitting in the front seat, facing the back seat, talking to her. She testified that Charlotte Faye DeShon asked her if she wanted a cigarette and that "Faye took a cigarette and put her elbows on the steering wheel, she turned around to throw me the matches, as she went to turn back around we hit Mr. Lyle." She further testified that Charlotte Faye DeShon finished lighting her cigarette before turning to throw the matches to her. We quote the following testimony as given by Sandra Heath on cross examination:

"Q. Where were her hands when she went to light the cigarette and had her elbows on the steering wheel?

"A. She used her hands to light the cigarette.

"Q. What did she use?

"A. A pack of matches.

"Q. She did light the cigarette before the accident happened?

"A. When she did she threw me the matches and turned her head, when she turned back around we hit.

"Q. Right or left hand?

"A. Right.

"Q. She finished the cigarette lighting?

"A. Yes, sir."

This witness testified that the automobile of the appellants was being driven at a speed of about thirty-five or forty miles per hour. She also testified that as Charlotte Faye De-Shon "went to turn back around I saw the Lyle's car and we hit him." She estimated that the Lyle car was approximately twenty feet from her when she saw it.

Hugo Addie, who operates Freeman's Filling Station, testified that he was standing in the door of the station and he saw the Lyle car proceeding down the road in an opposite direction from that which the DeShon car was approaching; that Lyle was going about five or ten miles per

hour, and was making a left turn; that he did not see the actual collision, but that the DeShon automobile was in its proper lane and struck the right hand front fender of the Lyle vehicle; that Lyle told him that he didn't see the DeShon car and "it was my fault that I didn't see the car." He also testified that the appellants' automobile was bent up in the front and "it was nothing but a tomato can."

P. L. Burton, a State Highway Patrolman, testified that he investigated the collision between the car of the appellants and that of Lyle. He said that the posted speed limit at the scene of the collision was thirty-five miles per hour and that he found no skid marks. He testified that the entire front of the DeShon car was smashed in back toward the driver, and that the right front and right side of the Lyle car was smashed in.

J. V. Harris testified that he was the third car back of the DeShon car and had been following the same for some distance. He estimated the speed of the DeShon car as being "close to forty" or "going at least forty" miles per hour. However, he did not see the collision.

Mrs. Aileen Lyle, the wife of William Lyle, testified that she went to the hospital to visit Charlotte Faye DeShon and that Miss DeShon stated to her "Don't blame Mr. Lyle too much. I am just as much to blame as he is."

Raymond DeShon, one of the appellants, testified that he visited William M. Lyle in the Aiken County Hospital on the second day following the accident and "he told me he didn't see the Volkswagen, that it was his fault."

Charlotte Faye DeShon, the driver of the vehicle in which respondent's intestate was riding, testified that she did not recall anything for a mile or so prior to the collision. She denied having any cigarettes or matches in her possession at the time of the collision. She did admit that it was raining and foggy and that visibility was low, stating "You could not tell somebody walking down the road." She said

that she did not remember telling Mrs. Lyle that it was as much her fault as it was that of her husband.

William M. Lyle, a respondent herein, testified that he was on his way to Freeman's Filling Station to purchase gasoline and that in order to go to such station it was necessary for him to cross the lane of the highway on which traffic traveled in the opposite direction; that in order to accomplish this crossing he slowed down to five or ten miles an hour, stopped, held out his hand, looked down the road, and didn't see the Volkswagen. He testified that when he got to the far edge of the pavement at the entrance to the filling station, he saw the Volkswagen about two car lengths from him. He said that as he was in the act of going into the filling station he was struck by the Volkswagen. He testified that it was a rainy and foggy night and that when he looked before crossing the highway he didn't see any vehicle approaching. He denied that he made any admission that the collision was his fault. He further testified that he did not see the Volkswagen "until it got right on top of me." He admitted that in the daytime one might be able to see four hundred feet in the direction from which the appellant's car was coming but not at night when it was rainy and foggy.

Considering the testimony in this case in the light most favorable to the respondent, we think that the jury could reasonably infer that the appellants were reckless in failing to keep a proper lookout, in failing to have their car under control, and in driving at a rate of speed that was excessive under the existing conditions.

The statutory law of this State provides that no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. It is further provided that speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the

highway in compliance with legal requirements and the duty of all persons to use due care. Section 46-361 of the 1952 Code. Where no special hazard exists that requires lower speed for compliance with Section 46-361, the speed of any vehicle in a residential area shall not exceed thirty-five miles per hour, any speed in excess of such limitation is *prima facie* evidence that the speed is not reasonable or prudent and such is unlawful. Section 46-362 of the Code. The driver of every vehicle shall drive at an appropriate reduced speed * * * when any such hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions. Section 46-363 of the Code. There is evidence from which the jury could have concluded that Charlotte Faye DeShon violated the foregoing sections of the Code. We have held that causative violation of an applicable statute constitutes actionable negligence and is evidence of recklessness, willfullness and wantonness. *Field v. Gregory et al.,* 230 S. C. 39, 94 S. E. (2d) 15.

The complaint alleges recklessness on the part of the appellants in failure to keep a proper lookout for other vehicles upon the highway and in operating the Volkswagen without having the same under proper control. In the case of *Spurlin v. Colprovia Products Co.,* 185 S. C. 449, 194 S. E. 332, it was held that if any testimony is introduced touching or supporting the allegations of failure to keep a proper lookout or have proper control, it would ordinarily be a question for the jury whether such conduct constitutes a reckless disregard of the rights of a passenger within the meaning of the guest statute. There is in this record sufficient evidence, heretofore recited, requiring the submission of the question to the jury as to whether the driver of the DeShon car recklessly failed to keep a proper lookout and to have her automobile under proper control under conditions known to her immediately prior to and at the time and place of the collision.

The appellants take the further position that even if the operator of the DeShon car was guilty of gross negligence or reckless disregard for the rights of her passengers, there is no showing of a causal connection between such and the collision. This Court has held that negligence or recklessness, to render a person liable, need not be the sole cause of an injury. It is sufficient to show that it is a proximate concurring cause. *Benton v. Pellum,* 232 S. C. 26, 100 S. E. (2d) 534; *Padgett v. Colonial Wholesale Distributing Co.,* 232 S. C. 593, 103 S. E. (2d) 265, and *Matthews v. Porter,* 239 S. C. 620, 124 S. E. (2d) 321. Counsel contends that Miss DeShon had no chance to avoid the collision because of the proximity of the Lyle car to hers when it was driven across her lane of traffic; since she could not have avodied the collision by keeping a proper lookout, her negligent or reckless failure to do so was not a proximate cause of the injury. This is one inference which could be drawn from the estimates of witnesses as to the proximity of the cars when the turn was made by Lyle. However, it is not the only inference. There was testimony that the Lyle car started turning slowly at Kirkland's Grocery, shown by a plat in evidence to be some one hundred feet from the point of impact. There was also testimony that Lyle stopped his car in the highway before making the turn, gave a proper signal, waited for one car to pass, and then proceeded slowly across the highway. We cannot say, as a matter of law, that, if Miss DeShon had exercised a degree of care commensurate with the circumstances, she could not have observed the peril in time to avoid the collision. We think the question of proximate cause was properly submitted to the jury.

It appears that in argument to the jury that counsel for the appellants asked the jury not to pin the label of a "killer" on Miss DeShon, and to "consider the matter carefully before you find a verdict that will brand her as a killer." By way of reply, respondent's counsel argued that the action being tried was civil in nature and that the verdict of the jury would have no significance with reference to any crime.

During the charge of the trial Judge, he instructed the jury, "There was something said in argument to you about pinning a person's death on any one. I charge you that you are not concerned with any criminal case here. This is a civil case for damages. Any verdict you might render would have no criminal implications whatsoever." The appellants, by their motion for a new trial and by exceptions to this Court, assert that the foregoing charge was prejudicial to their rights.

It is apparent from the record that counsel for the appellants injected into this case the question of whether the jury should pin the label of a "killer" on Miss DeShon. Counsel for the respondent replied thereto as is heretofore set out. Ordinarily, one cannot complain of an error which his own conduct has induced. *State v. Worthy,* 239 S. C. 449, 123 S. E. (2d) 835.

We must leave the control of argument of counsel very much to the discretion of the trial Judge, who is on the scene of action and is in much better position than we are to judge as to what is improper argument. *McLane v. Metropolitan Life Ins. Co.,* 154 S. C. 366, 151 S. E. 608. We have held that the granting of a motion for a new trial by reason of anything occurring during the trial of the case is in the sound discretion of the trial Judge and his ruling thereabout will not be disturbed unless there has been an abuse of discretion. *Wynn v. Rood,* 228 S. C. 577, 91 S. E. (2d) 276. Here, the trial Judge saw fit to charge the jury as is above stated. Such was done in view of the arguments of counsel for both parties. One of the highest duties of a trial Judge is to see that a fair and impartial trial is had, and to prevent, as far as possible, all improper and extraneous influences from finding their way to the jury. It is the duty of the trial Judge to state to the jury the nature of the action and the issues arising in the trial thereof. He may charge as to what is not an issue and give a cautionary instruction thereabout if such does not prejudice either party.

We cannot say that the instruction to which exception is taken was improper or prejudicial to the rights of the appellants. This exception is overruled.

The next question for determination is whether the trial Judge committed error in refusing the appellants' motion for a new trial made on the ground that the amount of the verdict apportioned against the appellants was disproportionate to the culpability of Charlotte Faye DeShon. The total verdict in this case was $11,000.00, apportioned in the amount of $10,000.00 against the appellants and $1,000.00 against Lyle. The error charged by the exception is that the verdict is inconsistent with the law and evidence, because "the testimony is not susceptible of the reasonable inference that Miss DeShon was ten times as negligent as the defendant Lyle." This exception raises no issue for determination on this appeal. At appellants' request, the jury was instructed, quoting from the records "To the effect that if the jury should find both defendants are liable to plaintiff, it could determine the amount of actual damages and apportion that amount between the defendants DeShon and the defendant Lyle." This instruction imposed no duty on the jury to apportion according to the relative culpability of the parties or by any other standard. Whatever view one may take of the evidence, the verdict of the jury is not, in this respect, inconsistent with the law of the case as established by the charge. Therefore, the exception is without merit.

We have examined the other exceptions made by the appellants as are set forth in the appendix in this case. We find them to be without merit and they are overruled.

The judgment of the lower Court is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.