THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Daisy Wallace Simpson, Respondent/Appellant,
 v.
 William Robert Simpson, individually and as shareholder/member of Simpson Farms, L.L.C. and William R. Simpson, Jr., 
 as a shareholder/member of Simpson Farms, L.L.C., Appellants/Respondents.
 
 
 

Appeal From Clarendon County
 R. Wright Turbeville, Family Court Judge

Unpublished Opinion No. 2007-UP-147
Submitted December 1, 2006  Filed April 4, 2007    

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

 
 
 
 Steven Smith McKenzie, of Manning, for Appellants-Respondents.
 C. Dixon Lee, James T. McLaren, Jan L. Warner, of Columbia, for Respondent-Appellant.
 
 
 

WILLIAMS, J.:  In this domestic action, William Robert Simpson (Husband) appeals the family courts order, arguing the family court erred in (1) failing to rule on his motion for a retroactive decrease in alimony and a return of attorneys fees and costs; (2) its award of equitable distribution; (3) awarding his former wife, Daisy Wallace Simpson (Wife) alimony; (4)  finding Husbands yearly income is $150,000 per year; (5) its valuation of property; (6) characterizing him as not having cooperated in the discovery process; and (7) awarding Wife attorneys fees and costs.  Wife also appeals the award of attorneys fees.  We affirm in part, reverse in part, and remand.  
FACTS

Husband and Wife married in 1968, and resided in Clarendon County, South Carolina throughout the duration of the marriage.  When the couple first married, they bought a mobile home and lived on property owned by Husbands father.        
In 1971, Husbands father died, and his will left a life estate in the Simpson family home to Husbands mother, with the remainder to Husband.  Husband asked Wife to quit her job at a manufacturing plant in Manning to stay home with his mother.  The couple moved into the house and lived there throughout the remainder of the marriage.  Husbands mother lived at the house for one year until she remarried.  Although Husbands interest in the house did not fully vest until his mothers death in 1991, the couple substantially renovated the home.  Husband and Wife completed most of the renovations themselves.  The couple has three children. Two of the children are emancipated and the youngest was attending college at the time of the hearing.    
During the marriage, Wife had several outside jobs but primarily stayed at home and took care of the family.  Husband became a successful farmer and land owner and eventually developed some of his land into residential lots.     
In 1989, pursuant to a hand-written agreement between William Simpson, Jr., (Simpson, Jr.) and Husband, Simpson, Jr. began working for Husband.  The agreement provided that Simpson, Jr. would work on the family farm for $120 per week.  In exchange for his low salary, Husband would provide Simpson, Jr. with equity in the land and farm machinery.  In 2000, a month after Husband and Wife reconciled, Husband began to transfer most of the property he owned into Simpson Farms, L.L.C. (the LLC).  
The couple separated three times during the marriage.  The first separation occurred in the 1980s and the second in 1999.  In 1999, the parties began formal litigation, but they reconciled in 2000.  The parties final separation occurred in 2003.  
After the parties reconciled in 2000, Wife began attending real estate classes and eventually earned her real estate license.  Husband did not approve of Wifes pursuit of her real estate license and did not speak to her during this time.  Husband purchased and sold numerous properties, often using other real estate agents.    
On March 4, 2003, Wife filed this action against Husband, the LLC, and Simpson, Jr.[1]  Wife also requested, inter alia, separate support and maintenance, equitable division of the marital estate, and attorneys fees.  At the temporary hearing, the family court ordered Husband to pay Wife $1,000 per month pendente lite spousal support.  Further, the family court ordered Husband to advance Wife $15,000 pendente lite attorneys fees with the caveat that the family court could treat the fees as a credit toward Wifes equitable apportionment at the final hearing.  
Most of the three day trial concerned the value of Husbands vast property holdings and the amount of Husbands income.  Husband testified he did not know exactly what he owned.  In many instances, the value Husband assigned to his properties and assets contradicted what he reported on his tax returns.  Further, Husband testified the LLC never filed a tax return nor did it have an operating account.  Although Husband denied selling his interest in S & T Land Developers (S & T) after litigation commenced, a deed dated March 10, 2003six days after Wife instituted her actionshowed that Husband transferred his fifty percent interest to Ray Tidwell for $5.  During trial, Wifes expert testified the value of Husbands fifty percent interest in S & T was $318,000.  Husband also testified that he pays Simpson, Jr. a different amount each year.  He could not recall what he paid his son the previous year.  
The family court found that Husband and Simpson, Jr. were not credible witnesses.  The family court based its decision, in part, on testimony of Husbands witness, Tracy Amos, a certified public accountant.  Amos admitted Husband undervalued assets, failed to report to her his antique car collection, and failed to report on his tax return a sale of timber for $40,000.  The family court found Husband repeatedly testified that he did not know what he owned.  In his responses to discovery it appeared that he made little effort to assist his lawyer or the court to identify what he owned.  The family court also found Husband testified that he purchased property with cash to assist sellers in avoiding taxation.  Ultimately, the family court found Husband tried to hide his true income and ultimately determined his income was $150,000, which was the amount he reported to banks and other lending institutions.  
The family court awarded Wife $1,000 per month in periodic permanent alimony and awarded her 34% of the marital property, valued at $784,055.  In making an equitable division of the marital property, the family court recognized the existence of the LLC and awarded Wife half of Husbands fifty percent interest, while leaving Simpson, Jr.s fifty percent interest intact.  The family court reserved the issue of attorneys fees and costs and asked that both parties submit affidavits regarding fees and costs no later than January 15, 2005.  
On January 11, 2005, Husband filed a Rule 59(e) motion asking the family court to reconsider its order.  The morning of the hearing on the Rule 59(e) motion and the remaining issue of attorneys fees, the clerk of court brought the family court the Notice of Appeal filed by Husband.  The family court took the position that the filing of the notice divested it of jurisdiction to hear the Rule 59(e) motion, and Husbands attorney agreed.  Thereafter, the family court dismissed the Rule 59(e) motion and proceeded with the attorneys fees hearing.  After the hearing, the family court awarded Wife $85,000 in attorneys fees and costs.  Both parties appeal.
STANDARD OF REVIEW
On appeal from the family court, this Court has the authority to find facts in accordance with its own view of the preponderance of the evidence.  Rutherford v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992).  This broad scope of review does not require us to disregard the family courts findings, and we remain mindful of the fact the family court, who saw and heard the parties, is in a better position to evaluate their credibility and assign weight to their testimony.  Cherry v. Thomasson, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).
ISSUES
I.  Husbands Appeal

 
 A. 
 Did the family court err in failing to rule on Husband’s post-trial motion for a retroactive decrease in alimony and a return of attorney’s fees and costs awarded to Wife at the temporary hearing?
 
 
 B. 
 Did the family court err in its equitable division of the marital property?
 
 
 C.
 Did the family court err in awarding wife alimony?
 
 
 D.
 Did the family court err in finding Husband’s yearly income was $150,000?
 
 
 E.
 Did the family court err in its valuation of Husband’s properties?
 
 
 F.
 Did the family court improperly characterize Husband as uncooperative in the discovery process?
 
 
 G. 
 Did the family court err by awarding Wife attorney’s fees?
 

II.                Wifes Appeal

 
 A. 
 Did the family court err in failing to award Wife the full amount of requested attorney’s fees and costs?
 

LAW/ANALYSIS
I.  Husbands Appeal
A.  Post-trial Motion
Husband argues the family court erred in failing to rule on his Rule 59(e), SCRCP, motion for a decrease in alimony and a return of temporary attorneys fees and costs.  We disagree.
Rule 205, SCACR, provides that upon service of the Notice of Appeal, the appellate court shall have exclusive jurisdiction over the appeal . . . .  In Elam v. S.C. Dept of Transp., the South Carolina Supreme Court recognized that a party may attempt to file both a Rule 59(e) motion and a notice of appeal.  If [that] does occur, one or the other will be inappropriate . . . .  361 S.C. 9, 20, 602 S.E.2d 772, 778 (2004) (citing Hudson v. Hudson, 290 S.C. 215, 216, 349 S.E.2d 341, 342 (1986) (holding that when a timely post-trial motion is pending before the lower court, any notice of appeal will be dismissed without prejudice as premature)).  Under Elam and Hudson the appellant should notify the appellate court of the pending post-trial motion in writing, and the clerk will dismiss the case with prejudice.  Rule 225, SCACR offers the alternative of moving the appellate court to lift the automatic stay of the lower court proceedings so that the post trial motion may be heard.
Husband exercised neither of these options which would have kept jurisdiction in the family court.  In fact, Husband agreed with the family court that the Court of Appeals had exclusive jurisdiction once the notice of appeal had been filed.  In any event, even though the family court dismissed Husbands Rule 59(e) motion, we find the divorce decree did address Husbands arguments concerning a reduction in Wifes alimony and a return of attorneys fees awarded at the temporary hearing.   
The divorce decree awarded Wife $1,000 per month in permanent periodic alimony.  The family court concluded Wife was entitled to alimony pursuant to the statutory factors, and accordingly, the family court denied Husbands request for a decrease in the alimony awarded at the pendente lite hearing.
Husband also maintains the family court failed to rule on his motion for a return of the attorneys fees and costs, which he paid to Wife at the temporary hearing.  After a separate hearing on the issue of attorneys fees and costs, the family court issued an order stating in addition to the fees awarded at the temporary hearing, an additional contribution of $85,000 would be reasonable.  Therefore, the family court took into consideration the pendente lite attorneys fees and rejected Husbands argument that he was entitled to the money he advanced to Wife during the hearing.    
B. Equitable Distribution Award
Husband assigns numerous points of error to the family courts equitable distribution of marital assets.  First, Husband argues the family court failed to consider the debts of the LLC and farming equipment in making its award.  Husband also argues the family court erred by awarding certain properties to Wife and awarding the Buck and Bull Country Store to Husband.  Lastly, Husband argues the family court improperly awarded Wife a part of the marital home and surrounding acreage that he transferred into the LLC three years previously.   We address each argument in turn.  
1.  Failure to Consider Debts
Initially, we note Husbands first assignment of errorthat the family court failed to consider the debts of the LLC and farm equipment when distributing assets to the partiesis not preserved for our review.  To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but it must have been raised to and ruled upon by the family court.  Charleston County Dept of Soc. Servs. v. Jackson,  368 S.C. 87, 104-05, 627 S.E.2d 765, 775 (Ct. App. 2006) (citing Staubes v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review.)).  Although Husband made a Rule 59(e) motion, for the reasons stated above, the family court dismissed the motion without a ruling.  Therefore, this issue is not preserved.   
Even if this issue was preserved, we find that any error in the family courts failure to properly assess the debt of the LLC stems from Husbands lack of candor with the court.  The apportionment of marital property is within the family courts sound discretion, and we will not disturb the apportionment on appeal absent an abuse of that discretion.  Bowers v. Bowers, 349 S.C. 85, 97, 561 S.E.2d 610, 616 (Ct. App. 2002).  Section 20-7-472 of the South Carolina Code (Supp. 2005) lists fifteen factors for the family court to consider when apportioning the marital estate and vests the family court with the discretion to determine what weight should be assigned to each factor.  Thomas v. Thomas, 346 S.C. 20, 25, 550 S.E.2d 580, 583 (Ct. App. 2001).  On review, we look to the overall fairness of the apportionment, and if the result, taken as a whole, is equitable, courts weighing specific factors differently than the family court is irrelevant.  Id.
 At the outset, we note the family court did consider Husbands debt in lands owned by Husband in conjunction with partners excluding Simpson, Jr.  The family court took into account the debts of S & T, which were $184,457, and subtracted that debt from Husbands fifty percent interest when it found Husbands interest had a value of $218,772.  The family court took into consideration the debt on lands owned by Husband and his partner, Mr. Jonte, when assessing the value of Husbands interest in those lands as $51,250.  Additionally, the family courts order specifically lists each factor set forth in section 20-7-472, and under the debt factor provides: In making the equitable apportionment, as set forth below, the [c]ourt has considered all liabilities in coming up with the marital estate which is after liabilities based on my view of the evidence.  We also observe that Wifes expert testified that none of the properties owned by Husband or the LLC had any recorded mortgages.  
Husband points to a handwritten document he submitted to the family court, which purportedly shows his debts, to bolster his argument that the family court erroneously concluded he showed no documentary evidence of debts.  We find the family court properly discounted this evidence because to find Husbands handwritten document of debts credible, the family court would have to consider Husband to be credible.  The record is replete with evidence that Husband undervalued his assets.  Further, as noted previously, his fixed asset and equipment records do not match the depreciation schedule on his tax return.  Also, when asked how much money he owed banks, Husbands reply was I dont know.  The family courts order plainly states, I find as a fact that the credibility of Defendants [sic] Simpson, Jr., and Simpson, Sr., are subject to significant question.  Therefore, it is evident from the family courts order that the court was aware of the statutory factors and considered the debt based on the submitted credible evidence.  Accordingly, we find the family court did not err.
2.  Award of Property and Buck and Bull Country Store
Next, Husband argues the family court erred by awarding property that was in the LLC to Wife and awarding him the Buck and Bull Country Store.  Husband contends that the family court could not give Wife certain pieces of real property because they were part of the LLC.  We disagree.  
Husband did not raise this issue to the family court, and the family court dismissed his subsequent Rule 59(e) motion.  Therefore, this issue is not preserved for our review.[2]  See Hatfield v. Hatfield, 327 S.C. 360, 489 S.E.2d 212 (Ct. App. 1997) (issue must be raised to and ruled on by family court to be preserved for appellate review).  
Even if this issue was preserved, we find no merit to Husbands claim that the property awarded to Wife was part of the LLC.  The family court order distinguishes the property owned individually by Husband from the property owned by the LLC.  The family court based its conclusion on research performed by Wifes expert who researched public records to ascertain what Husband owned individually, with other partners, and as a member of the LLC.  The family court awarded Wife six parcels of property and Husband argues that two of the six parcels were in the LLC.  He points to the testimony of one of his expert witnesses who testified: [I]tem D-7 was purchased two years after the formation of the LLC . . . .  However, it is unclear from the testimony that D-7 is the piece of property Husband refers to in his brief.  Furthermore, it is unclear whether the LLC or Husband purchased the property.  As to the second parcel, Husband points to the deed purporting to show the propertys transfer into the LLC.  The deed shows numerous transfers, and it is unclear as to whether this particular parcel was included in the transfers.  
It was husbands burden to show the property had been transferred to the LLC.  See Hodge v. Hodge, 305 S.C. 521, 526, 409 S.E.2d 436, 439 (Ct. App. 1991) (A spouse who wishes to claim that certain property is not part of the marital estate has the burden of presenting witnesses or evidence to establish its non-marital character . . . .).  Since Husband did not present credible evidence to support his contention, he failed to meet that burden.  Accordingly, we find the property the family court awarded to Wife was individually owned by Husband, and was not property owned by the LLC.  
As to the award of the Buck and Bull Country Store and surrounding property to Husband, we find no error in the family courts decision.  Simpson, Jr. operates the store, and the record indicates the store is thriving.    The family court is vested with the authority to apportion marital property, and we can discern no error in the family courts decision to award Husband the store, especially in light of the contentious relationship between Simpson, Jr. and Wife.  See Rampey v. Rampey, 286 S.C. 153, 156, 332 S.E.2d 213, 215 (Ct. App. 1985) (Apportionment of the marital estate is a matter left to the sound discretion of the family court.) (citation omitted).  Therefore, we find no merit to Husbands contention Wife should have been awarded the store.  
3.  Award of Interest in Marital Home
Next, Husband argues the family court improperly awarded Wife a part of the marital home and surrounding acreage that he transferred into the LLC three years previously.   Husband contends the family court should have charged him with only half the homes value of $122,500, instead of the entire value of $245,000 because Simpson, Jr., as a member of the LLC, owned half of the house.  At most, Husband believes Wife was entitled to half of his fifty percent interest in the marital home.  We disagree.
Husband does not dispute the family courts finding the home he inherited was transmuted into marital property; his only argument is that he transferred the house into the LLC.  The family courts order provides [i]t is not clear to the [c]ourt the marital home was ever transferred into the LLC, and it will be considered separately.  Husbands brief points to numerous places in the record that he believes show the marital home was transferred into the LLC.  However, these places in the record show only that Husband owned the marital home, along with numerous other properties.  Accordingly, because Husband did not meet his burden in showing the marital home was in the LLC, we find the family court properly charged Husband with the homes full value.
C.  Alimony Award
Husband argues the family court erred by awarding permanent periodic alimony to Wife.  Husband contends Wife makes more than $30,000 and is capable of supporting herself.  We disagree.
The decision to award alimony rests within the sound discretion of the family court, and absent an abuse of discretion, it will not be disturbed on appeal.  Dearbury v. Dearbury, 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002) (citing Clardy v. Clardy, 266 S.C. 270, 222 S.E.2d 771 (1976)).  When awarding alimony, the family court must consider and weigh the following statutory factors set forth in section 20-3-130(C) of the South Carolina Code (Supp. 2005):  

  (1) the duration of the marriage . . . [and] the ages of the parties at the time of the marriage and at the time of divorce or separate maintenance action . . . ; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse . . . ; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated earnings of both spouses; (7) the current and reasonably anticipated expenses and needs of both spouses; (8) the marital and nonmarital properties of the parties . . . ; (9) custody of the children . . . ; (10) marital misconduct or fault . . . ; (11) the tax consequences to each party . . . ; (12) the existence and extent of any support obligation from a prior marriage . . . ; and (13) such other factors the court considers relevant.

In its final order, the family court thoroughly examined each of the statutory factors and made specific findings under each factor.  The family court considered the duration of the marriage, finding the parties marriage was a long-term marriage that spanned thirty-five years.  The family court also found that Husband was in good health and that Wife was currently in relatively good health, despite having to take medication for high cholesterol and a rapid heartbeat.  Further, the family court made extensive findings regarding the employment history and earning potential of each spouse.  The focus of these findings primarily centered on Husbands attempt to hide his income.  The family court ultimately concluded that Husbands income and assets greatly exceeded what he reported in his financial declaration.  The family court found Husbands income to be $155,000 per year.  Notably, the family court considered Husbands assertion that he did not have the funds sufficient to support Wife; however, he did have funds to continue purchasing assets in the name of S & T, a company in which he claims to have no ownership.  The family court found that the children attended private schools, Husband owned an antique car collection, and the parties extensively renovated their home.  The family court concluded the parties had an upper middle class family lifestyle.
The family court found that although Wife initially quit her job at Husbands insistence to be a homemaker, she is currently employed as a real estate agent.  The family court further found that Wife works solely on a commission basis and that during the six-month period from January 1 to June 15, 2004, her gross revenue on homes she sold was $30,555.  Out of the $30,555, the real estate company, Agent Owned Realty, withheld $10,928.92 in franchise fees.  This finding is corroborated in the record by the testimony of Claude Loadholt, the president of Agent Owned Realty, who testified that Wife pays numerous fees and overhead to the company.  Loadholt testified that in addition to franchise fees and overhead Wife pays many of her own expenses, including advertising, automobile, and continuing education expenses.  With those expenses in mind, Wifes net income for that six-month period can be estimated to be close to $15,000.  Therefore, we find the family court correctly concluded her net income was $30,000 per year.  Considering the discrepancy in income and the needs of the parties, we hold the family court did not abuse its discretion by awarding alimony.    
D. Husbands Yearly Income
Husband argues the family court erred when it found his income was $150,000 per year.  He contends his income was approximately $60,000-$70,000 per year.  We disagree.
The family court found that Husbands annual income was $150,000 per year based upon a NBSC financial statement Husband gave the bank in which he represented his annual income was $150,000 per year.  Husband argues that two certified public accountants, Mark Hobbs and Tracey Amos, both found his income was approximately $60,000 per year.  This testimony was based upon Husbands tax returns, which both experts, when questioned, admitted were not complete.  For example, Hobbs testified that neither Husband nor Simpson, Jr.s tax returns show the Buck and Bull Country Store as having either a gain or loss.  Further, Hobbs testified it was unusual that Husbands general ledger was so different from his tax returns.  For example, the ledger showed payments to Simpson, Jr. as payments in 2002, but in 2003, the payments to Simpson, Jr. were classified as miscellaneous.  Hobbs opined that any time he saw records as mixed up as Husbands, a heightened fraud risk existed because the records indicated that he wanted to change the classification of his assets and liabilities on a yearly basis.  
Additionally, Hobbs found Husbands fixed asset and equipment records could not be reconciled to the depreciation schedule on his tax returns.  The difference between the two amounted to over $700,000.  Hobbs also testified that the LLC has never filed a tax return and because Husband has no formula by which he pays Simpson, Jr., he is able to shift his income around.[3]  
Amos testified that Husband informed her he no longer had approximately sixty pieces of farm equipment; however, those assets were listed in the depreciation schedule on his tax return.  Further, Husband sold timber for $40,000, and this sale was not listed on his tax return.  Moreover, when asked whether Husbands intentions could be to dupe Wife out of her interest in the property and at the same time not pay income tax, Amos conceded it was a possibility.  
Therefore, the evidence presented at trial showed that Husband made significantly more income than he reported, and he manipulated Simpson, Jr.s income to any level he desired.  We find the family court was left with no alternative but to use Husbands statement that he submitted to the bank showing his income was $150,000.  We also recognize that Husband made no effort to cooperate in identifying his assets and income and cannot complain of an error which his own conduct has induced.  Cox v. Cox, 290 S.C. 245, 248, 349 S.E.2d 92, 93 (Ct. App. 1986) (citing Shearer v. Deshon, 240 S.C. 472, 126 S.E.2d 514 (1962)); see also Patrick v. Britt, 364 S.C. 508, 513, 613 S.E.2d 541, 543-44 (Ct. App. 2005) (finding when husband failed to provide the court with any meaningful representation of his actual income that husband would be hard pressed to complain of the family courts ruling . . . the court of appeals does not sit to relieve self-inflicted wounds) (citations omitted).  Accordingly, we find no error in the family court finding Husbands income is $150,000 per year.
E. Valuation of Property
Husband argues the family court erred in its valuation of the property owned by the LLC.  Husband contends the family court erroneously accepted Wifes experts value of the land at $1,244 per acre.  We disagree. 
Again, we note Husband did not raise this issue to the family court, nor was this issue ruled upon in any subsequent Rule 59(e) motion; therefore, this issue is not preserved for our review. See Riggs v. Riggs, 353 S.C. 230, 237, 578 S.E.2d 3, 6 (2003) (citing Hatfield v. Hatfield, 327 S.C. 360, 489 S.E.2d 212 (Ct. App. 1997) (issue must be raised to and ruled on by family court to be preserved for appellate review))[4].
Even if this issue was preserved, we find no error in the family courts valuation of the land owned by the LLC.  The family court has broad discretion in valuing marital property, and this court will affirm the findings of the family court when the findings below are supported by the evidence. 
 Fields v. Fields, 342 S.C. 182, 187, 536 S.E.2d 684, 686 (Ct. App. 2000) (citing Smith v. Smith, 327 S.C. 448, 459, 486 S.E.2d 516, 519 (Ct. App. 1997) ([A]n appellate court will affirm the family courts valuation of marital property if it is within the range of the evidence presented.)). 
During the trial, Husband presented Tracy Amos, a certified public accountant and a certified valuation analyst, as an expert witness.  She testified that she valued the total amount of land owned by Husband using the values for each individual property that Husband supplied.  Additionally, Amos testimony revealed that for one of the properties, Husband submitted to her an appraisal value of $6,500, but that the tax assessment on that property for 2004 was $107,600.  Further, she found at least sixty items of farm equipment that Husband no longer owned listed on his depreciation schedule that he submitted to the IRS.  In light of the fact Husbands own witness could not explain Husbands inconsistent reporting of assets nor his undervaluing of his assets, we find no error in the family courts decision to forgo using his experts valuation.
Wife presented Beth Linhardt, a certified and licensed real estate appraiser, as an expert witness.  The family court found that Linhardts asset listing was inaccurate and based on only one method, comparable sales.  The family court also found Linhardt had a difficult time determining what property had been acquired and sold by Husband due to the lack of income or expense records maintained by Husband or Simpson, Jr.  Further, the family courts order found that Linhardt had difficulty determining what property Husband owned because he failed to provide a list of his property, and she had to look in several counties to determine what Husband owned.  Linhardt testified she spent 1,248 hours attempting to identify all of the property owned by Husband.  
Ultimately, Linhardt concluded that the LLCs assets were $846,650, and that Husbands fifty percent share would be half of this value.  Because the family court found Linhardts valuation was incomplete at best, the court had to make adjustments to the value based on the evidence before it.  The record reveals the family court took into consideration Linhardts lists of property that showed what Husband owned individually, and what he owned as a member of the LLC.  The family court was careful to eliminate the properties on Linhardts appraisal which had been duplicated or sold.  The family court found the marital home was not in the LLC and subtracted its acreage from the remaining property when it came up with 481.86 acres of property in the LLC.  The family court then valued the property at $599,650, which is $1,244 per acre.  
After reviewing the record, we find the family courts rejection of Husbands valuation of his property was well within its discretion, especially because Husband presented no credible evidence of valuation.  See Smith v. Smith, 294 S.C. 194, 198, 363 S.E.2d 404, 407 (Ct. App. 1987) (The weight the trial court affords the testimony of witnesses, including parties, is discretionary with the trial court . . . .  In valuing marital assets, the trial court is fully within its discretion to choose the valuations of one party over those of the other party.) (citations omitted).  In this particular case the family court had a difficult task in determining what property Husband owned and in subsequently valuing it.  Under the difficult circumstances of this case, the family court valued the property to the best of its ability.  Accordingly, we hold that the family court considered fully all of the evidence presented, and we assign no error in the family courts determination of the value of the marital property. 
F.  Discovery 
Husband argues the family court improperly characterized him and Simpson, Jr. as uncooperative in the discovery process.  We disagree.
Again, we note this argument, having not been raised to and ruled upon by the family court, is not preserved for our review.  See Lucas v. Rawl Family Ltd. Pship, 359 S.C. 505, 511, 598 S.E.2d 712, 715.[5]  However, even if this issue was preserved, we find the family court properly characterized Husband as uncooperative in the discovery process.
The family courts order provided:

 [I]t has been difficult for this [c]ourt to make a final determination of [Husbands] assets and income[,] and the [c]ourt has had to cross reference the testimony of all parties and witnesses as no one presented a clear and precise picture of the identification of the marital assets.  [Husband] testified on numerous occasions that he did not know what he owned, and his responses to interrogatories and other discovery indicate to the [c]ourt he made little effort to clarify what he owned during the course of this litigation.

Husbands answers to Wifes interrogatories begin our inquiry into Husbands non-cooperation during the discovery process. Out of the forty-three questions Wife submitted, Husband replied sixteen times this information is not available at this time.  Other times, he simply replied that the questions would be answered before the hearing.  During his deposition, when Wifes counsel asked Husband, Why didnt you answer [the interrogatory asking you] to identify the financial institution or lenders by name and address?  Is there any reason you didnt answer that?  Husbands response was No.  When asked when he sold property within the last five years, Husbands response was I dont know.  At one point during his deposition, Husband testified that he didnt know exactly what he owned.  
The record is replete with examples of Husbands stubborn refusal to be candid with the family court.  Further, Husband seems to argue that because he submitted numerous documents to the family court, he did comply with discovery; however, his tax returns were incomplete at best, and numerous experts testified to the fact Husband underreported the value of his assets and his income.  We find the family court was properly skeptical of any of Husbands handwritten submitted documents that he alleges show his financial worth.  Accordingly, the family court properly characterized Husband as uncooperative in the discovery process.  
G.  Attorneys Fees
Husband argues the family court erred in even considering Wifes request for fees and costs because her documentation in support of fees was untimely.  Husband contends, because Wife did not file a Rule 6(b), SCRCP, motion for an enlargement of time, the family court should not have considered her documentation.  We disagree.
The family courts final order provides: The matter of attorneys fees, and costs, and expenses is hereby reserved, and counsel for both Plaintiff and Defendants shall submit to this [c]ourt affidavits . . . not later than January 15, 2005.  Wife submitted her affidavit for attorneys fees and costs on January 18, 2005.  Husband contends it was error to award attorneys fees without ruling on his motion relating to the timeliness of Wifes supporting documentation.  However, he did not argue the family courts failure to address his motion at the hearing on Wifes Rule 59(e) motion for reconsideration of the award of attorneys fees.  This issue, not having been ruled upon by the family court, is not preserved for our review.  An issue cannot be raised for the first time on appeal, but it must have been raised to and ruled upon by the family court to be preserved for appellate review. Lucas, 359 S.C. at 511, 598 S.E.2d at 715.
Even if this issue was preserved, we find no error in the family courts decision to rule on the issue of attorneys fees.  January 15, 2005, was a Saturday.  Monday, January 17, 2005 was Martin Luther King Jr. Day, a state and federal holiday and the family court was closed.  Wife filed her attorneys fee affidavit with the clerk of the family court on the first day the family court was open after January 15.  Accordingly, Wifes affidavit was timely filed because holidays and the weekends extend court filing deadlines.  See Rule 6(a), SCRCP (The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a state or federal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor such holiday.).  Accordingly, the family court judge did not commit error in ruling on this issue.
II.     Wifes Appeal
A.      Attorneys Fees & Costs
Wife argues the family court erred by not awarding Wife adequate attorneys fees and expenses.  Further, Wife maintains the family court erroneously limited its consideration of the factor of customary legal fees for similar services to the local geographic area where the trial was held.   
The total marital estate in this case is valued at nearly $2.4 million.  Wife was awarded $1,000 per month in alimony, and her equitable share in the marital assets was $784,055.  Wife employed two attorneys from Columbia.  Her attorneys charged $400 per hour for their work, $200 per hour for associates, and $100 per hour for paralegal work.  Her two expert witnesses, Hobbs, the CPA, and Linhardt, the appraiser, charged $23,458.88 and $51,000, respectively, for their work in assessing and valuing the marital estate.  
Wife argues the family court abused its discretion by not giving sufficient consideration to Husbands material misrepresentations, non-disclosure of income, and undervaluation of marital assets.  The court made numerous findings regarding Husbands intentional non-disclosure of information and misrepresentations, including: 

 [Husbands] Financial Declaration is not an accurate reflection of his spendable income . . . .  It is now clear to the [c]ourt that the Husbands income and assets greatly exceed that which has been reported on his Financial Declarations. . . . I find that [Husband] has obfuscated his true income and assets . . . . [Husband] testified he purchased property with cash so that sellers could avoid taxation. . . . Based upon the swapping of money and property between Defendants Simpson Sr. and Simpson Jr., the discovery process has been significantly extended and confusion has reigned supreme. . . . I find as a fact that the credibility of the Defendants Simpson Jr. and Simpson Sr. are subject to significant question. . . . The demeanor of [Husband] while testifying before this [c]ourt and his own admissions as to some of his financial transactions raise questions in the [c]ourts mind as to how open and honest he has been with [Wife] and the [c]ourt regarding his economic transactions. . . .

The record supports the family courts conclusions that Husbands behavior unnecessarily complicated this case.  It is important to remember when analyzing attorneys fees that this Court does not sit to relieve self-inflicted wounds.  Rish v. Rish by and Through Barry, 296 S.C. 14, 17, 370 S.E.2d 102, 104 (Ct. App. 1988).  Likewise, this Court looks unfavorably on cases, such as this one, where a party withholds information that is necessary for the proper adjudication of the matters under consideration.  Skipper v. Skipper, 278 S.C. 104, 106, 292 S.E.2d 596, 598 (1982).  Husbands lack of cooperation in discovery forced Wifes attorneys to obtain relevant information through other more difficult means.  See Johnson v. Johnson, 296 S.C. 289, 372 S.E.2d 107 (Ct. App. 1988) (Because Husbands behavior caused Wife to incur additional expenses in the form of attorneys fees at trial and on appeal, those expenses should be included in the family courts determination of attorneys fees on remand.).
In E.D.M. v. T.A.M., the South Carolina Supreme Court delineated the four factors used to determine whether attorneys fees are warranted in a given case:

 (1) the partys ability to pay his or her own fee;
 (2) beneficial results obtained by the attorney;
 (3) the parties respective financial conditions;
 (4) the effect of the attorneys fee on each parties standard of living.

307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).  Additionally, in Glasscock v. Glasscock, the South Carolina Supreme Court clarified the six factors used to determine a reasonable attorneys fee:

 (1) the nature, extent, and difficulty of the case;
 (2) the time necessarily devoted to the case;
 (3) professional standing of counsel;
 (4) contingency of compensation;
 (5) beneficial results obtained;
 (6) customary legal fees for similar services.

304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).  
In the present case, we find the family court properly identified and applied the Glasscock factors until it considered the last factor, the customary legal fees for similar services factor.  The family courts order reads Based on the testimony of Ray E. Chandler, W.C. Coffey, Jr., and experience, I find that customary fees for similar work in this area is $185-$250 per hour.  Hourly fees that exceed this amount in this area are unusual rather than customary.  This conclusion is not supported by the record.  Ray Chandler, Husbands former attorney, testified as follows:

 Q:      Ray, you say youve been practicing law for twenty-seven years?
 A:      Ive been practicing law for thirty-three years.  Ive been practicing domestic law until last year when I have it up.  Twenty-seven, twenty-eight years.
 Q:      What were your rates when you gave up the good domestic practice per hour?
 A:      About two hundred and fifty dollars an hour in this county.
 Q:      What is your observation of the average rates of domestic fees in Clarendon, Lee, Williamsburg, in the Third Circuit, Sumter County?
 A:      I think the numbers that I see run between a hundred and sixty, seventy-five, eighty-five dollars.

Mr. Chandler did not testify as to the customary fees for a complex case such as this one.  W.C. Coffey never testified about rates whatsoever.  Instead, his testimony concerned the common practice of father-son farmer teams setting up LLCs in which to hold their land and equipment.  
On the other hand, the family court was presented with affidavits from Wifes attorneys as well as attorneys Lon Shull III and Mark Taylor, all of whom testified that $400 per hour is a reasonable and customary rate in Clarendon County for family law experts who try complicated cases like the one at bar.  Our Supreme Court has approved the practice of considering attorneys resumes or professional standing as well as attorneys affidavits when deciding appropriate attorneys fees.  Baron Data Sys., Inc. v. Loter, 297 S.C. 382, 385, 377 S.E.2d 296, 297 (1989).  Additionally, the court may consider whether the case was contested in good faith, whether the proof was simple or complicated because of the extent that material facts were disputed, and whether trial preparation by the attorneys required unusual skill, effort, or investment of time.  Prevatte v. Asbury Arms, 302 S.C. 413, 417, 396 S.C. 642, 644 (1990).
The record shows this was not an average case; rather it was a quite complex case which required unusual skill, effort, and time.  The family court was presented with testimony of four lawyers concerning customary fees for similar services in a complex case.  However, the court relied on testimony of Husbands former attorney who testified regarding average rates for a domestic case.  This was error.    
Numerous cases in South Carolina list attorneys fees charged in the locality for similar services as a factor to be considered in awarding attorneys fees.  See e.g., Blumberg v. Nealco Inc., 310 S.C. 492, 494, 427 S.E.2d 659, 660 (1993) (emphasis added); Meene v. Keowee Key Prop. Owners Assn Inc., 368 S.C. 557, 569, 629 S.E.2d 690, 697 (Ct. App. 2006); Rowell v. Whisnant, 360 S.C. 181, 185-86, 600S.E.2d 96, 99 (Ct. App. 2004).  Therefore, we cannot assign error to the family courts consideration of the local geographic area in determining the proper attorneys fees. 
Accordingly, the portion of the family courts order regarding attorneys fees and costs is reversed and remanded for the family court to properly assess the facts of the case and the Glasscock factors in accordance with our decision. 
CONCLUSION
For the reasons stated above, the family courts order is 
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.[6]
ANDERSON, and HUFF, JJ., concur.

[1] Wife named Simpson, Jr. as a defendant because he is a member of the LLC.
[2] This issue was not raised in Husbands Rule 59(e) motion and would not have been preserved even if the motion had gone forward.  
[3] We also note that Simpson, Jr.s tax return and his accumulation of assets cannot be reconciled.  For example, in 2001 he purchased $14,000 worth of real estate and his tax return showed an income of $17,000.  Despite a tax return never showing an income greater than $26,000, in 2003, Simpson, Jr. owned $150,000 worth of farm equipment.  
[4] This issue was not raised in Husbands motion for reconsideration.  
[5] Husband did raise this issue in the Rule 59(e) motion, which the family court dismissed.  
[6] We decide this case without oral argument pursuant to Rule 215, SCACR.