661 S.E.2d 369

**Tyrone SHUMPERT, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 26483.**

Supreme Court of South Carolina.

Submitted April 16, 2008.

Decided May 12, 2008.

Appellate Defender Robert M. Pachak, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Julie M. Thames, all of Columbia, for Respondent.

Chief Justice TOAL:

The post-conviction relief ("PCR") court denied relief to Petitioner Tyrone Shumpert, and Petitioner requested that this Court issue a writ of certiorari to review the PCR court's

decision. This Court issued the writ to review whether the PCR court erred in refusing to admit an affidavit which purportedly contains evidence of jury misconduct. Because we find the PCR court did not err in refusing to admit the affidavit, we affirm.

## FACTUAL/PROCEDURAL BACKGROUND

The criminal case that preceded this PCR action arose out of an armed robbery which occurred late one evening in May 2002, in Laurens County, South Carolina. A small band of individuals robbed the two patrons of a local laundromat, and although the total number of criminal participants and the number of participants who were armed is disputed, it is undisputed that at least some of the robbers brandished firearms during the robbery. One of the confessed participants implicated Petitioner in the crime, and the State charged Petitioner with two counts of armed robbery, one count of conspiracy to commit armed robbery, and one count of possession of a firearm or knife during the commission of a violent crime.

The State's case at trial consisted of the testimonies of the victims and the confessed participant. The confessed participant testified to Petitioner's involvement in the crime, but neither of the victims could identify Petitioner as having been involved in the robbery. Believing that the State's case in chief was relatively weak, Petitioner opted not to put up a defense in order to give the last closing argument to the jury. The jury acquitted Petitioner of the possession charge, but convicted him on the armed robbery and conspiracy charges. Petitioner received a total sentence of twenty-two years imprisonment, and his direct appeal was dismissed by the court of appeals pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Petitioner filed a PCR application, and at the PCR hearing, Petitioner sought to admit an affidavit of one of the jurors in his criminal trial as evidence of jury misconduct. In relevant part, the affidavit provides:

I recall it being discussed in the jury room that if [Petitioner] wasn't guilty [ ] he would have taken the stand and informed us, and also one of the jurors stated that if he

wasn't guilty [ ] he would have had family members or witnesses take the stand to tell us.

There were a couple of people at least, maybe more, that made these statements. I firmly believe that these comments weighed importantly in the jury deciding to convict [Petitioner]. The tall skinny white lady who kept wanting to talk to [the trial court] seemed very concerned by this and I believe it played a big part in her decisions. She was very confused about it all. Also the preacher's wife, I can't recall her name, was very unsure about it.

I don't recall anybody in the jury room mentioning the judge telling us not to consider that. I do remember the judge saying that we can only "reach a decision based on the evidence presented before you today."

I think when we voted we were ten to two to convict when the ladies asked the judge if they could go home and sleep on it. If I had it to do again, it would have been nine to three because I think I let those comments about him not testifying swing my vote. Deep down inside I think we made a wrong decision and for the wrong reason—basically for the comments that were made in that room about him not getting up to deny it. I also believe that we made those ladies change their vote because of that. I feel that others in that jury, if they are asked, will agree with me, especially those two ladies.

At the PCR hearing, Petitioner argued that the affidavit constituted evidence that some jurors may have considered the fact that Petitioner did not testify at trial in their deliberations. The State argued that the affidavit was inadmissible under the rules of evidence and the relevant jurisprudence, and that the affidavit was based largely on hindsight and speculation. The PCR court held that the affidavit was inadmissible, and the hearing continued in order to address the remaining claims in Petitioner's PCR application. The PCR court ultimately denied relief.

This Court granted Petitioner's request for a writ of certiorari, and Petitioner presents the following issue for review:

Did the PCR court err in excluding the juror's affidavit?

66

## STANDARD OF REVIEW

 This Court gives great deference to the PCR court's findings and conclusions. *Caprood v. State,* 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000) *(citing McCray v. State,* 317 S.C. 557, 455 S.E.2d 686 (1995)). A PCR court's findings will be upheld on review if there is any evidence of probative value supporting them. *Cherry v. State,* 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989). Where the PCR court's decision is controlled by an error of law, however, this Court will reverse. *Pierce v. State,* 338 S.C. 139, 145, 526 S.E.2d 222, 225 (2000).

## LAW/ANALYSIS

Petitioner argues that the PCR court erred in excluding the juror's affidavit. We disagree.

For a considerable period of history, the rule in South Carolina was that a juror's testimony was not admissible to prove either a juror's own misconduct or the misconduct of fellow jurors. *State v. Thomas,* 268 S.C. 343, 348, 234 S.E.2d 16, 18 (1977) *(citing Barsh v. Chrysler Corp.,* 262 S.C. 129, 203 S.E.2d 107 (1974)). Rule 606(b) of the South Carolina Rules of Evidence alters this common law rule by allowing a juror to offer testimony as to "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." The rule additionally provides:

[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, . . . [n]or may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

*Id.* Rule 606. thus draws a distinction between evidence of external influences on the jury's deliberations and comments of jurors occurring during deliberations. While the rule allows evidence of the former to be introduced, it prohibits the introduction of the latter.

Although Rule 606 expressly prohibits the introduction of juror testimony regarding both the content and the effect of statements occurring during the jury's deliberations, this Court has recognized an exception to that categorical prohibition. In *State v. Hunter*, this Court held that juror testimony involving internal misconduct may be received only when necessary to ensure fundamental fairness. 320 S.C. 85, 88, 463 S.E.2d 314, 316 (1995). That case involved allegations by a juror that the verdict was tainted by racial prejudice, and this Court affirmed the rule announced in *Hunter* in the later case *State v. Aldret*, 333 S.C. 307, 509 S.E.2d 811 (1999), which involved allegations that the jury began deliberations prematurely. The Court has instructed that a defendant must demonstrate prejudice from jury misconduct in order to be entitled to a new trial. *Id.* at 314, 509 S.E.2d at 814.[1]

Turning the focus to an analysis of the affidavit offered in the instant case, we find that it was not necessary that the PCR court admit the affidavit in order to ensure fundamental fairness. Though the affidavit is significantly longer than this summary, the affidavit essentially provides that the juror recalls "a couple of people, maybe more" remarking that if Petitioner was not guilty he would have taken the stand or presented a defense; that the juror does not recall anyone mentioning the trial court's instructions not to consider Petitioner's decision not to testify; that if the juror had it to do over again, he would cast his initial vote to acquit; that the juror thinks other jurors changed their vote because of the comments; and that the juror believes the jury made the wrong decision and "think[s][he] let those comments ... swing [his] vote." Although this Court has not articulated precise guideposts for judging whether proffered juror testimony raises sufficient questions of fundamental fairness so as to be admissible, a return to our precedent is instructive.

*State v. Hunter*, the seminal case from this Court on the issue of juror testimony regarding statements and conduct

---

1. Both of these cases were direct appeals from criminal convictions. The parties to the instant case did not argue that the rules for the introduction of juror testimony and the standard for a grant of post-conviction relief based on internal jury misconduct differ from the standard applicable on direct appeal. We therefore assume, but do not decide, that the analysis outlined in our direct appeal precedent applies.

during the deliberative process, involved a juror's allegations that she was coerced through racial intimidation to cast her vote one way. We held "[i]f a juror claims prejudice played a role in determining the guilt or innocence of a defendant, investigation into the matter is necessary." 320 S.C. at 88, 463 S.E.2d at 316. "To hold otherwise," we stated, "would violate 'the plainest principles of justice.'" *Id.* The case *McDonald v. Pless,* a federal decision, similarly recognizes the potential for "instances in which [juror testimony] could not be excluded without violating the plainest principles of justice." 238 U.S. 264, 268–69, 35 S.Ct. 783, 59 L.Ed. 1300 (1915) (internal quotation marks omitted). This Court relied on *McDonald* in announcing the limited exception to the exclusion of juror testimony regarding deliberations, *see Hunter,* 320 S.C. at 88, 463 S.E.2d at 316, and other federal precedent echoes *McDonald's* language that juror testimony must raise significant questions of substantial injustice in order to be admissible. *See, e.g., Downey v. Peyton,* 451 F.2d 236, 239–40 (4th Cir.1971) (describing evidence that the jury's verdict was based on certain extrinsic information as creating such a probability of prejudice that the verdict was deemed inherently lacking in due process).

Using this jurisprudence as a guide, it is clear, in our view, that this affidavit does not measure up to the high bar that precedent sets for the seriousness of allegations that juror testimony must raise before it may be admitted. We think it is plain that the portion of the affidavit pertaining to what may have confused other jurors or influenced their votes is pure speculation presented without any specific factual support, and the juror's testimony about his own deliberative process is similarly flawed. The generic assertion that a juror would vote the opposite way if given another opportunity too closely resembles a case of buyer's remorse from a guilty verdict to be given much credence. Moreover, although the juror avers that if he had the preliminary vote to do over again, he would cast an initial vote to acquit, this testimony does not relate to the juror's ultimate vote of guilty. The jury returned a unanimous verdict, and the trial court polled the jury after it returned a verdict.

This analysis should not be interpreted as suggesting that more concrete and factually specific allegations regarding a

jury's consideration of a defendant's failure to testify might not raise such significant questions that it is necessary to admit the testimony in order to ensure fundamental fairness. In this vein, it is important to point out a subtle flaw in Petitioner's argument. Petitioner argues that the question presented in the instant case is whether consideration of a defendant's failure to testify can potentially implicate fundamental fairness. We disagree. The question we address here is whether the affidavit offered in the instant case suggests that the conduct of Petitioner's jury rendered his trial fundamentally unfair. Because the affidavit at issue does not suggest that Petitioner's trial was fundamentally unfair, we affirm the PCR court's decision excluding the juror's affidavit.[2]

## CONCLUSION

■ The occurrence of a significant degree of jury misconduct calling for the admission of juror testimony has proved to be quite rare. *See State v. Pittman,* 373 S.C. at 554–55, 647 S.E.2d at 158 (suggesting that the mine-run of prejudicial jury misconduct cases involve internal coercion based on race or gender bias). For this reason, we think trial courts are justified in exercising a degree of caution before entertaining such evidence in an attack on a jury's verdict. As the court stated in *McDonald:*

> But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might vindicate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct ... [and] the result would be to make what was intended to be a private deliberation the constant subject of public investigation.... [T]he argument in favor of receiving such evidence is not only very strong, but unanswerable-

---

2. As a housekeeping matter, it is important to note that even if circumstances called for the admission of the affidavit, we have held that a defendant must demonstrate prejudice from jury misconduct in order to be entitled to a new trial. *See Aldret,* 333 S.C. at 314, 509 S.E.2d at 814.

70

when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule would open the door to the most pernicious arts and tampering with jurors. The practice would be replete with dangerous consequences. It would lead to the grossest fraud and abuse and no verdict would be safe.

238 U.S. at 267–68, 35 S.Ct. 783. With these principles in mind, we affirm the PCR court's denial of relief.

MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.