JUSTICE HEARN:
Although I concur fully with the majority, I write separately to address an additional error of law committed by the PCR court that I believe requires reversal. Specifically, the PCR court allowed two jurors to testify as to the jury’s deliberative process in contravention of Rule 606(b) of the South Carolina Rules of Evidence.[10] For this reason, I would reverse and remand for a new PCR hearing and thus concur fully but write separately.
*665 In his PCR application, Winkler alleged members of the jury physically intimidated the only African American juror to change his vote from life to death during sentencing deliberations. Before the PCR hearing began, the State made a motion to exclude any testimony by the jurors pursuant to Rule 606(b), but the court denied the motion and allowed PCR counsel to call two jurors, Juror Wallingford and Juror Rough-ton, to testify as to this issue.
Prior to the jurors being called, the State renewed its objection to their testimony based on Rule 606 grounds. In both instances, the PCR court allowed the testimony, stating that as the factfinder at the PCR hearing, it could discern the portions of admissible testimony from the portions of inadmissible testimony. The two jurors then testified—without further objection from the State—as to specifics that occurred during the jury’s deliberations during the sentencing phase, including the way they initially voted and the reasons they changed their votes from life to death.[11]
In particular, Juror Wallingford (the African American juror) testified that contrary to PCR counsel’s assertions, he was not physically coerced or racially threatened into changing his vote from life to death. Moreover, although Juror Roughton’s testimony briefly touched on Juror Wallingford’s treatment at the hands of the other jurors, PCR counsel primarily elicited testimony about Juror Roughton’s reasons for changing her vote from life to death. Juror Roughton testified she suffered extreme regret over changing her mind *666 and voting for death, and in retrospect, she did not believe Winkler deserved the death penalty. Further, Juror Roughton testified she—and possibly several other jurors—were extremely confused over the trial court’s jury instructions, particularly as they related to whether the sentence (death or life) had to be unanimous. Juror Roughton stated she believed if the jury did not unanimously choose death, Winkler would be acquitted and “be out.”
At the close of Winkler’s case-in-chief, the State moved for a directed verdict on the claim that the lone African American juror was physically threatened to change his vote from life to death. PCR counsel conceded there was no evidence of physical coercion and withdrew the claim.[12]
Later, in the initial order granting relief, the PCR court found trial counsel was deficient during the sentencing phase for failing to object to the trial court’s “refusal to answer the jury’s questions on what would happen if the jury could not reach a unanimous verdict on Winkler’s sentence.” The PCR court found that deficiency prejudiced Winkler, although it did not cite any specific facts in support of its finding. Rather, the PCR court stated only, “Had the jury’s questions been answered by the judge, a reasonable probability exists that the jury would not have reached a unanimous verdict and the [trial] court would have imposed a sentence of life in prison.”[13] Upon the State’s motion to alter or amend the judgment, the PCR court further explicated its prejudice finding, citing *667 exclusively to Juror Roughton’s testimony regarding the jury’s confusion and her regret.[14]
Rule 606(b), SCRE, states:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon that or any other juror’s mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror’s mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror’s affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.
(Emphasis added). Nonetheless, the Court has previously held that “juror testimony involving internal misconduct may be received [ ] when necessary to ensure fundamental fairness.” Shumpert, 378 S.C. at 67, 661 S.E.2d at 371.
Fundamental fairness is an extremely high bar that essentially requires a defendant to demonstrate the jury’s verdict amounted to a denial of his right to due process. Id. at 68, 661 S.E.2d at 372; State v. Galbreath, 359 S.C. 398, 406, 597 S.E.2d 845, 849 (Ct. App. 2004) (citing State v. Hunter, 320 S.C. 85, 88, 463 S.E.2d 314, 316 (1995)). In fact, the Court has thus far only recognized two types of allegations serious enough to implicate a trial’s fundamental fairness: either (1) the jury’s *668 verdict was a result of racial or gender intimidation of a particular juror; or (2) the jury began its deliberations prior to the close of all of the evidence. See Shumpert, 378 S.C. at 67-68, 661 S.E.2d at 371-72 (discussing State v. Aldret, 333 S.C. 307, 314, 509 S.E.2d 811, 814 (1999); Hunter, 320 S.C. at 85, 463 S.E.2d at 314).
In numerous other cases the Court found, absent coercion, a juror’s post-verdict testimony was inadmissible. See, e.g., State v. Pittman, 373 S.C. 527, 554-55, 647 S.E.2d 144, 158 (2008); Galbreath, 359 S.C. at 405-07, 597 S.E.2d at 849. Often, such testimony contains merely a “generic assertion that a juror would vote the opposite way if given another opportunity,” which the Court has previously found “too closely resembles a case of buyer’s remorse from a guilty verdict to be given much credence.” Shumpert, 378 S.C. at 68, 661 S.E.2d at 372. Moreover, even allegations that a juror misunderstood the law do not implicate fundamental fairness or due process. Pittman, 373 S.C. at 554, 647 S.E.2d at 158 (finding jurors’ misunderstanding of the law and other “internal influences,” such as incorrect information coming from other jurors, did not implicate fundamental fairness, and thus testimony to that effect was inadmissible); Shumpert, 378 S.C. at 68, 661 S.E.2d at 372 (same); Galbreath, 359 S.C. at 405, 406, 597 S.E.2d at 848, 849 (collecting out-of-state cases).
Here, Winkler’s allegations of coercion—particularly involving the lone African American juror on the jury—raised a fundamental fairness issue and warranted the PCR court’s admission of the jurors’ testimony over the State’s Rule 606(b) objection. See Hunter, 320 S.C. at 88, 463 S.E.2d at 316 (“We find allegations of racial prejudice [or intimidation] involve principles of fundamental fairness. Accordingly, the trial judge was proper in considering [the juror’s] testimony.”). However, critically, the PCR court should have granted the State’s motion in part and limited the testimony to the allegations of coercion. In failing to do so, I believe the PCR court committed an error of law.
Specifically, after the State’s objection to each juror’s testimony, the PCR court informed the State it would hear all of the testimony and later decide which portions were admissible and which were inadmissible. Thus, the PCR court erred in its *669 interpretation of Rule 606(b), SCRE, by allowing PCR counsel to elicit a significant amount of testimony as to the jury’s deliberative process. Moreover, the PCR court compounded this error by allowing the inadmissible portion of Juror Roughton’s testimony to pervade its prejudice analysis in its final order, citing exclusively to Juror Roughton’s confusion and regret over her decision to vote for death in support of its prejudice finding.[15] As such, there is no admissible evidence in the record to support the PCR court’s findings, particularly with respect to prejudice, and I would reverse and remand for a new PCR hearing in which the jurors’ testimony is excluded.[16] See Dempsey v. State, 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005) (stating the Court will reverse the PCR court if no probative evidence exists to support the PCR court’s findings).
For the foregoing reasons, I concur fully with the majority.[17]

. See Rule 606(b), SCRE (prohibiting post-verdict juror testimony regarding the jury’s internal workings); Shumpert v. State, 378 S.C. 62, 66-67, 661 S.E.2d 369, 371 (2008) (explaining Rule 606, SCRE, allows evidence regarding external influences on the jury's deliberations to be introduced, but prohibits introducing evidence of internal influences affecting the jury’s verdict—such as comments made during deliberations, or the effects of those comments—unless such evidence is necessary to ensure the trial’s fundamental fairness).

. Winkler argues because the State did not object during the jurors’ testimony, this issue is unpreserved. See generally State v. Johnson, 324 S.C. 38, 41, 476 S.E.2d 681, 682 (1996) (holding that a contemporaneous objection to allegedly inadmissible testimony is required to properly preserve the error for appellate review (citation omitted)). I disagree and would find the issue preserved because when the PCR court overruled the State’s Rule 606(b) objection and stated it would determine the admissibility of the testimony received, it relieved the State of its burden to contemporaneously object to the inadmissible portions of the testimony. See State v. Bryant, 316 S.C. 216, 220, 447 S.E.2d 852, 855 (1994) (finding to preserve an issue for appellate review, a parly need not move to strike testimony which the trial court had already ruled was proper, as such a motion would have been futile); State v. Ross, 272 S.C. 56, 60-61, 249 S.E.2d 159, 162 (1978) (holding that once the judge rules on an objection, counsel need not repeat the objection after each question).

. The State also moved for a directed verdict on Winkler’s claim that the trial court’s Allen charge was unduly coercive. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The State argued, inter alia, PCR counsel was attempting to support its claim by using Juror Roughton’s testimony about what caused her to change her mind and vote for death instead of life in violation of Rule 606(b), SCRE. The PCR court denied the State’s motion for a directed verdict as to that issue.

. Generally, a defendant’s direct appeal centers on the trial judge’s errors, whereas PCR focuses on trial counsel’s mistakes. Thus, given the procedural posture of this case, I find it significant that the PCR court appeared to find error in the trial judge’s failure to answer the questions, rather than trial counsel’s failure to object to the judge’s actions. Regardless, as outlined by the majority, it is at best unclear whether an objection would have prompted the trial court to answer the juiy’s questions.

. In discussing the prejudice resulting from counsel’s failure to object, the PCR court merely stated:
[T]he testimony presented at this [PCR] trial clearly indicates that at least one juror who opposed the death sentence and desired a life sentence incorrectly thought that the applicant would be free from any sentence unless the jury reached a unanimous decision on sentencing. That juror was led to believe that the applicant would be free to go or, at a minimum, would receive a new trial on his guilt or innocence unless the jury reached a unanimous decision of death or life in prison. The evidence indicates that the jury’s unanimous decision to impose the death sentence in this case was not based upon a correct understanding of the law but, rather, on the incorrect thought that the applicant would go free or get a new trial.

. Notably, much of Juror Roughton’s testimony is precisely the type of testimony Rule 606(b) is designed to prohibit. See Shumpert, 378 S.C. at 68, 661 S.E.2d at 372 (stating courts should give little credence to testimony amounting to mere buyer’s remorse). Indeed, she plainly stated she suffered (and continues to suffer) debilitating regret over her decision to vote in favor of the death penalty. Further, a portion of Juror Roughton's testimony revealed the jury may have been laboring under a misapprehension that Winlder might "be out” if it did not unanimously vote for death. At best, that testimony revealed the jury may have misunderstood the law, which the Court has repeatedly found does not implicate fundamental fairness. See, e.g., Pittman, 373 S.C. at 554, 647 S.E.2d at 158; Shumpert, 378 S.C. at 68, 661 S.E.2d at 372.

. Because Winlder withdrew his claim that Juror Wallingford was coerced into voting for death, there are no remaining allegations implicating the fundamental fairness of the trial, and thus no additional allegations that would warrant admitting any of the jurors' testimony.

. The majority rightly declines to address a second, moot error of law committed by the PCR court. Specifically, after finding counsel ineffective during the sentencing phase, the PCR court vacated Winkler’s death sentence and sua sponte imposed a sentence of life imprisonment without the possibility of parole. As the State argues, and Winlder concedes in his brief, should the PCR court vacate a death sentence, the appropriate remedy is not to itself impose a life sentence on the PCR applicant, but rather to remand the case back to the court of general sessions for a new sentencing proceeding. Tucker v. Catoe, 346 S.C. 483, 495, 552 S.E.2d 712, 718 (2001); see also Singleton v. State, 313 S.C. 75, 86, 437 S.E.2d 53, 59 (1993) (finding the appropriate relief to grant upon vacating a death sentence is remanding for a new sentencing *670 hearing, and holding that imposing an automatic life sentence without a new sentencing hearing “appears to be beyond the scope of an appropriate remedy on PCR” (citations omitted)).